**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Keith Dwayne GILBERT,
Defendant–Appellant.**

Nos. 88–3145, 88–3146.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted August 7, 1989.

Decided Aug. 31, 1989.

Thomas J. McCabe, Westberg & McCabe, Ctd., Boise, Idaho, for defendant-appellant.

Thomas E. Chandler, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WRIGHT, NORRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Keith Dwayne Gilbert appeals his conviction under 42 U.S.C. § 3631. Section 3631 prohibits interference with housing rights through force or threat of force. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Keith Gilbert was once a member of the Aryan Nations. He left that group to form his own white supremacist hate group. Evidence at Gilbert's trial showed that he was a racist and a bigot, that he believed White Aryans should not be in contact with any other race, that he believed children born to parents of differing races were not human, and that he embraced some Nazi doctrine. Gilbert told a college newspaper reporter that there were "seventeen niggers"[1] in Kootenai County, the county in which he resided, and that by the time his group was through there wouldn't be any.

In December of 1980, Gilbert mailed a letter and several posters to Susan Smith. Smith was the founder and an employee of an adoption agency that, among other things, placed minority children with white families. The letter "condemned" Smith's actions and warned her to "keep [her] human trash off [his] property." The posters were similar. "The Death of the White Race" poster discusses miscegenation and urges "whiteman" to "fight for your own kind." "The Black Plague/Death to Rapists" poster implies that black men are rapists and urges that they be hung. The

---

**1.** Gilbert told the reporter that the proper term for blacks was "nigger". We use the phrase as sparingly as possible.

"He May Be Your Equal, But He Sure Isn't Ours" poster implies that crime is committed by blacks. The "Race Traitors" poster speaks of a "Second Revolution" and warns that "[w]hite persons consorting with blacks will be dealt with according to the Miscegenation Section of the Revolutionary Ethic ... [miscegenation] will be punished by Death, Automatic by Public Hanging. Negroes involved in Miscegenation will be shot as they are apprehended." The final poster, "Official Runnin' Nigger Target," is a caricatured silhouette of a black man.

In July of 1982, Gilbert drove his car at Lamar Fort in an attempt to intimidate Fort. Fort was a black child that had been adopted by a white family. Fort avoided being struck by Gilbert's car only by moving out of the way at the last moment.

Between the summer of 1982 and March of 1983, Gilbert verbally harassed Scott Willey, Fort's white stepbrother. In March of 1983, Gilbert stated to Willey, "How are thee today? Thou shall not live long." In August of 1983, Gilbert sicced his large St. Bernard, whom he called "Nigger Eater," on Amanda Morrison. Morrison was a black child who lived with her adoptive white family across the street from Gilbert.

On November 27, 1985, a one-count information was filed charging Gilbert with violation of 42 U.S.C. § 3631(c) in connection with his mailings to Smith. On December 11, 1985, a four-count indictment was returned charging Gilbert with violation of 42 U.S.C. § 3631(b) in connection with the incidents described above.[2] After protracted procedural battles, which culminated in *United States v. Gilbert*, 813 F.2d 1523 (9th Cir.1987), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1988), Gilbert was convicted.[3]

**2.** The fourth count, which involved Gilbert spitting in the face of a mentally retarded black girl, was dismissed on motion of the government.

**3.** Gilbert is currently incarcerated in the Idaho State Penitentiary for an unrelated state crime. He has not yet served his federal sentence.

## II

### A. Section 3631(c) Charge

#### 1. Sufficiency of the Evidence

■ Section 3631(c) punishes

[w]hoever ... by force or *threat of force* willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with ... any citizen because he is or has been, or in order to discourage such citizen or any other citizen from lawfully aiding or encouraging other persons to participate, without discrimination on account of race, color, religion, sex or national origin, in [the occupation of a dwelling].

*42 U.S.C. § 3631* (emphasis added). Section 3631(c) applies to the work of adoption agencies. *United States v. Gilbert*, 813 F.2d 1523, 1528 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1988).

A critical element of the offense is the use of "force or threat of force" to interfere with the work of the adoption agency. Gilbert argues that, by law, his actions do not fall within the proscriptions of section 3631 because none of the mailings threatened harm or violence to Susan Smith.

■ Gilbert failed to renew his motion for acquittal at the conclusion of the trial. Thus, review is for plain error. *United States v. Comerford*, 857 F.2d 1323, 1324 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989). If we find the evidence to be legally insufficient, we have a duty to reverse. *United States v. Ramirez*, 880 F.2d 236, 238, 239 (9th Cir.1989).

In *Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam), the Supreme Court emphasized that "[w]hat is a threat must be distinguished from what is constitutionally protected speech."[4] The Court found the

**4.** The Court was considering an alleged threat to the President's life in violation of 18 U.S.C. § 871.

language at issue to be "crude" and "offensive," but not to constitute a threat. *Id.* at 708, 89 S.Ct. at 1041. Similarly, Gilbert argues that his mailings to Smith merely comprise the extremes of political discussion. *See id.* at 707–08, 89 S.Ct. at 1041 (political discussion often vituperative).

Gilbert sets forth and parses each of the mailings to Smith. The bottom line of his analysis is that not one of the mailings explicitly says "I am going to hurt you if you don't stop what you are doing." Thus, he claims there was no threat; threat commonly being defined as "an expression of an intention to inflict evil, injury, or damage on another." Webster's Third New International Dictionary 2382. *See Salem Mfg. Co. v. First American Fire Ins. Co.,* 111 F.2d 797 (9th Cir.1940) (using dictionary definition of "threat"); *United States v. Howell,* 719 F.2d 1258, 1260 n. 1 (5th Cir.1983) (same), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984).

■ We have not previously considered the parameters of "threat" in the context of section 3631. However, our discussions of "threat" as used in 18 U.S.C. § 871, which prohibits threats against the President, are instructive. In *United States v. Mitchell,* we emphasized that threats should be considered "in light of the entire factual context," and went on to say that the "court may look at the surrounding events" as well as "the reaction of the listeners." 812 F.2d 1250, 1255 (9th Cir.1987).

Smith received a letter from a man who was obviously an extremist and espoused the ideas of a traditionally violent group. The letter condemned Smith's actions. The letter was accompanied by posters calling for a revolution—a term fraught with violence—and advocating lynch mobs, the shooting of black miscegenists, and the hanging of whites. While the mailings may not have said "we're going to hurt

you, Susan Smith," they certainly said "we don't like what you're doing, and we hurt people who do things we don't like." The fact that a threat is subtle does not make it less of a threat. The district court was correct in reviewing all of the mailings as a whole, rather than parsing them as Gilbert suggests. Viewed as a whole, and using the contextual analysis [5] we have used for other statutes, a rational trier of fact could find a threat. *Cf. Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The district court did not commit error.

### 2. *Jury Instructions*

■ Gilbert claims that the district court erred by not accepting two of his proposed jury instructions. A district court's choice of jury instructions is reviewed for abuse of discretion. *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982).

■ Gilbert's objection to the jury instructions centers around the word "willfully." [6] It is not entirely clear to us, however, what Gilbert argues the jury should have been instructed. Gilbert's proposed jury instruction, which was rejected by the district court, stated that a threat is willfully made "if the maker voluntarily and intelligently utters the words in an apparent determination to carry out the threat." There was no error in declining to use this instruction, because the instructions actually given specified that the threat must be a "true threat." We see no material difference between an instruction requiring a true threat and one requiring "an apparent determination to carry out the threat."

■ Even if we understand Gilbert's argument as contending that the government must prove to the jury that he *actually* intended to carry out his threats, we find no error in the district court's instructions. Although we have not considered the issue

---

5. Gilbert argues that a broad approach to defining threat may encroach upon his first amendment rights. These arguments were dealt with in our prior decision in this case. "[T]he statute's requirement of intent to intimidate serves to insulate the statute from unconstitutional ap-

plication to protected speech." *Gilbert,* 813 F.2d at 1529.

6. The given instruction read: "an act is done 'willfully' if done voluntarily and purposely, and with the specific intent to do something the law forbids, and not inadvertently or by mistake."

under section 3631, we have considered it in the context of threats to the President's life. In discussing "willfully," we noted:

> If a threat is made in a context or under such circumstances wherein it appears that it is a serious threat, and the President or his advisors are made aware of the existence of the threat, then the threat would tend to have a restrictive effect upon the free exercise of Presidential responsibilities, regardless of whether the person making the threat actually intends to assault the President and regardless of whether there is any actual danger to the President. Thus, even though the maker of the threat does not have an actual intention to assault the President, an apparently serious threat may cause the mischief or evil toward which the statute was in part directed.

*Roy v. United States*, 416 F.2d 874, 877 (9th Cir.1969). We concluded that willful meant only intentional. *Id.; cf. Mitchell*, 812 F.2d at 1255–56 (upholding section 871 conviction of defendant with no capacity to carry out threat). This rationale—that the threat *qua* threat is harmful and prohibited—would best serve the purpose of section 3631. *See* S.Rep. No. 721, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 1837, 1844. Just as the President's actions can be restricted by the mere existence of a threat, so too can the efforts of someone providing assistance in occupying a dwelling. Gilbert offers no argument against extending the reasoning; we now do so.

Under the analysis suggested by *Roy*, it is clear that the district court did not abuse its discretion. The given instruction advised jurors that the threat must be a "true threat"—as opposed, for example, to political hyperbole—and that it must have been intentionally made. Whether language is or is not a true threat is a proper question for a jury. *See United States v. Merrill*, 746 F.2d 458, 462 (9th Cir.1984) (discussing 18 U.S.C. § 871), *cert. denied*, 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985).

---

**7.** Section 3631(b) punishes those who by force or threat of force interfere in a discriminatory

### B. Section 3631(b) Charges

 Gilbert argues that the district court's "errors" concerning the section 3631(c) count prejudiced his defense of the three 3631(b) counts.[7] The district court committed no errors; Gilbert's argument is superfluous. Even if Gilbert were to argue that the mere trying of the counts together prejudiced him, his argument would fall. The district court instructed the jury to consider each count separately. There is no reason to assume they did not. *Cf. Page v. United States*, 356 F.2d 337, 338–39 (9th Cir.1966).

### III

The reasoning used by this court in considering threats under 18 U.S.C. § 871 is extended to 42 U.S.C. § 3631. The evidence is sufficient to support Gilbert's conviction, and the district court did not abuse its discretion in issuing the jury instructions. Gilbert's conviction is AFFIRMED.

manner with the right of another to occupy a dwelling.