**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfredo OROZCO–SANTILLAN,
Defendant–Appellant.**

No. 87–5338.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1990.

Decided May 23, 1990.

Harriet L. Hawkins, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Steven G. Madison, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, SCHROEDER and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Alfredo Orozco–Santillan appeals the district court's denial of his motion for acquit-

tal and his conviction on three counts of threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115. We affirm.

## I

The government indicted Alfredo Orozco–Santillan ("Orozco–Santillan") on three counts of threatening to assault a federal law enforcement officer, in violation of 18 U.S.C. § 115.

Count III is based on Orozco–Santillan's statements to Immigration Naturalization Service (INS) Agent Daniel Vela ("Vela") when Vela arrested and questioned him on June 17, 1987. Immediately prior to the statements, Vela, other INS agents, and police officers approached Orozco–Santillan and about fifteen other men at a Los Angeles park, and asked them to form a line. Instead of complying with the request, Orozco–Santillan and others walked away. When asked to return, Orozco–Santillan hesitated, and two police officers led him back to the line.

Vela then questioned Orozco–Santillan, who was handcuffed and kneeling on the ground. Orozco–Santillan hesitated in his responses, but eventually admitted that he was a deportable alien. When Vela and Police Officer Earl Bevans ("Bevans") asked Orozco–Santillan to stand, Orozco–Santillan replied, "take these handcuffs off and I'll kick your fucking ass." While being led to the police van, Orozco–Santillan pushed Vela with his body. Vela pushed back, and then Orozco–Santillan hit Vela with his elbow, calling Vela "pinche emigra," which Vela translated as "fucking immigration."

Orozco–Santillan was taken to jail and booked on immigration charges, where he repeated that he would "kick [Vela's] ass" if Vela removed his handcuffs. Vela noticed that Orozco–Santillan had a tatoo of boxing gloves, and asked if he boxed. Orozco–Santillan replied, "Yeah, do you want to try me?"

Count II is based on Orozco–Santillan's statements during a telephone call he made to Vela on August 4, 1987. Vela asked about the status of Orozco–Santillan's deportation case. Orozco–Santillan said he was back on the street and could obtain information about Vela from another INS agent, Jesus Quintenar. Orozco–Santillan also said "you motherfucker, lo vas a pagar," which Vela translated as "you will pay for this."

Count I is based on Orozco–Santillan's statements during a telephone call he made to Vela on August 6, 1987. The previous day, Vela had arrested Marco Antonio Vidal–Rubio, Orozco–Santillan's neighbor. When Vela answered his phone the next day, the caller said "Danny, this is Orozco. Somebody is going to die." The person also said "you ain't shit, Vela. You're just a punk. You better let Vidal go. You had no right arresting him. You can't fuck with me Vela, cause I'm out on bail! You're going to get your ass kicked, punk." These statements, made in a loud and angry manner, frightened Vela, and he understood the person was "out to kill him." When Orozco–Santillan was arrested on August 11, 1987, he said, "You can't fuck with me, Vela, just because I called."

At the close of both the government's and his case, Orozco–Santillan moved for judgment of acquittal on all counts, pursuant to Fed.R.Crim.P. 29. The district court denied the motions. Orozco–Santillan was found guilty, following a jury trial, on all three counts, and sentenced to 18 months confinement and three years probation. He timely appeals, arguing that as to Counts II and III the government failed to prove that his statements were threats, and as to Count I the government failed to prove that Orozco–Santillan was the caller.

## II

■ This court examines the sufficiency of the evidence to support a conviction and the denial of a motion for acquittal by reviewing the evidence "in the light most favorable to the prosecution," determining whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Sharif,* 817

F.2d 1375, 1377 (9th Cir.1987). "[T]he reviewing court must respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Goode,* 814 F.2d 1353, 1355 (9th Cir.1987) (quoting *United States v. Ramos,* 558 F.2d 545, 546 (9th Cir.1977)).

## III

To convict Orozco–Santillan under 18 U.S.C. § 115(a)(1)(B), the government must prove: 1) the defendant, 2) threatened to assault, 3) a federal law enforcement officer, 4) with intent to impede, intimidate, interfere with, or retaliate against that officer, 5) while the officer was engaged in or on account of the performance of his official duties.[1] The elements of this statute have not been the specific subject of a decision in our circuit. However, by applying Ninth Circuit case law interpreting analogous statutes,[2] we find that there was sufficient evidence to support the jury's verdict for each count.

## A

Orozco–Santillan contends that his statements to Agent Vela when he was arrested and during the telephone call on August 4, 1987, were not threats. (Counts II and III).

■ A threat has been defined for application in other statutes as "an expression of an intention to inflict evil, injury, or damage on another." *United States v. Gilbert,* 884 F.2d 454, 457 (9th Cir.1989) (quoting *Webster's Third New International Dictionary* at 2382) (applying 42 U.S.C. § 3631, which prohibits interference with housing rights by force or threat of force), *cert. denied,* —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990). Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners. *Id.* (citing *United States v. Mitchell,* 812 F.2d 1250, 1255 (9th Cir.1987) (applying 18 U.S.C. § 871, which governs threats to assault or kill the President)); *accord United States v. Merrill,* 746 F.2d 458, 462–63 (9th Cir.1984), (applying 18 U.S.C. § 871) *cert. denied,* 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985); *Roy v. United States,* 416 F.2d at 876 (applying 18 U.S.C. § 871). "The fact that a threat is subtle does not make it less of a threat." *Gilbert,* 884 F.2d at 457.

■ Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. *Mitchell,* 812 F.2d at 1255–56 (reasonable person standard employed in determining whether statement is threat under 18 U.S.C. § 871); *Merrill,* 746 F.2d at 462.[3] Although a threat must be "distinguished from what is constitutionally protected speech" (*Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam)), this is not a case involving statements with a political message. A "true" threat, where a reasonable person would foresee that the listener will believe he will

1. 18 U.S.C. § 115(a)(1)(B) states, "Whoever threatens to assault, kidnap, or murder a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b)."

2. We find the case law interpreting 18 U.S.C. § 871 (Threats Against the President) particularly relevant. Both sections 115 and 871 focus on the same evil: the detrimental effect upon a federal official's activity and performance of official duties that may result from threats against the official. *See Roy v. United States,* 416 F.2d 874, 876–88 (9th Cir.1969); Pub.L. 98–473, 1984 U.S.Code Cong. and Adm.News pp. 3182, 3496.

3. The only intent requirement is that the defendant intentionally or knowingly communicates his threat, not that he intended or was able to carry out his threat. *Gilbert,* 884 F.2d at 456–57 (applying 42 U.S.C. § 3631, governing threats to interfere with housing rights); *United States v. Davis,* 876 F.2d 71, 73 (9th Cir.1988) (applying 18 U.S.C. § 876, governing mailing threatening

be subjected to physical violence upon his person, is unprotected by the first amendment. *Merrill,* 746 F.2d at 462.

 As to Count III, the government established that Orozco–Santillan's statements about kicking Vela's "fucking ass" and boxing with him, considered in context, were threats to assault. *See, e.g., Gilbert,* 884 F.2d at 456–57; *Merrill,* 746 F.2d at 462. Vela had arrested Orozco–Santillan and subjected him to deportation proceedings. Orozco–Santillan had resisted joining the police line, had resisted answering Vela's questions, and had cursed at him and pushed him. In these circumstances, a rational jury could construe Orozco–Santillan's statements as threats.

The statements in Count II could also be considered to be threats to assault Vela. The fact that Orozco–Santillan's subsequently said Vela "would pay," rather than that he would injure Vela, is no defense. *See Gilbert,* 884 F.2d at 456–57. Further, Orozco–Santillan's statement must be considered in context. Vela had arrested Orozco–Santillan and subjected him to deportation proceedings. In these circumstances, a rational jury could conclude that Orozco–Santillan's statement made on the telephone was a threat.

## B

Orozco–Santillan's second argument is that the government failed to prove that he was the person who called Vela on August 6, 1987 (Count I). Orozco–Santillan concedes that there was sufficient evidence to prove all elements except his identity.

The identity of a telephone caller may be established by self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns and other distinctive characteristics, and disclosure of knowledge of facts known peculiarly to the caller. *United States v. Miller,* 771 F.2d 1219, 1234 (9th Cir.1985); Fed.R.Evid. 901.

During his testimony, Orozco–Santillan denied that he made the August 6 telephone call containing threatening statements to Vela. Vela, on the other hand, testified that he recognized the voice of the caller, that the contents of the call revealed information possessed by Orozco–Santillan, and furthermore that Orozco–Santillan admitted to making the call. Vela's testimony, if believed, was sufficient to establish the identity of the caller. We must assume that the jury resolved the conflict between Vela's and Orozco–Santillan's testimony in favor of Vela. *See Goode,* 814 F.2d at 1355. Therefore, there was sufficient evidence such that a reasonable jury could find that Orozco–Santillan was the person who made these threats to assault Vela. *Miller,* 771 F.2d at 1234.

The judgment of the district court is AFFIRMED.

---

communications), *cert. denied,* —— U.S. ——, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989); *Mitchell,* 812 F.2d at 1256 (interpreting 18 U.S.C. § 871); *United States v. Roy,* 416 F.2d at 877 (threat has restrictive effect upon the free exercise of Presidential responsibilities regardless of whether

the person making it actually intends to assault the President). Orozco–Santillan does not contend that he did not intend to make these statements, he argues only that the statements he made could not reasonably be interpreted as threats.