Stacy M. RICCIO, Plaintiff,

v.

CITY OF WEST HAVEN, Henry Szadkowski, and Michael P. Farrell, Defendants.

Civil No. 3:98CV709 (CFD).

United States District Court, D. Connecticut.

March 22, 2002.

John R. Williams, Williams & Pattis, New Haven, CT, for plaintiff.

Michael Peter McKeon, Hartford, CT, Joseph L. Rini, Hogan & Rini, New Haven, CT, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

### I. Introduction

The plaintiff, Stacy M. Riccio ("Riccio"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the individual defendants violated her First Amendment rights by retaliating against her for reporting to the police a remark made by a co-worker. She also appears to allege that the defendant City of West Haven (the "City") is liable because its mayor endorsed the retaliation. Finally, she claims that the defendants intentionally inflicted emotional distress upon her in violation of Connecticut common law. Riccio requests compensatory and punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as injunctive relief to reinstate her to her previous employment position.[1]

Pending is the defendants' motion for summary judgment [Doc. # 24]. For the following reasons, their motion is granted.

### II. Background[2]

The City is a municipality in Connecticut. At all times relevant to this action, defendant Henry Szadkowski ("Szadkowski") was an Assistant Corporation Counsel for the City and defendant Michael P. Farrell ("Farrell") was the Corporation Counsel. The Corporation Counsel's Office provides legal counsel and representation to the City and its officials.

Riccio was hired as a secretary in the Corporation Counsel's Office in 1984. In 1993, she voluntarily changed her position within the Corporation Counsel's Office to the part-time position of title searcher because she had twins.

Beginning in June 1997, Riccio and five other employees of the City filed a series of complaints with their international union claiming that John Madigan ("Madigan"), the president of their local, Local 681, AFSCME, AFL—CIO (the "union"), was not properly representing them. The essence of their complaint was that Madigan had colluded with the City's municipal leaders and management to favor him and his "closest associates" at the expense of other union members. Defs.'Memo. Support Summ.J., Ex. E. In January 1998, Madigan was removed from his position as president of the union by the international.

In early 1998, during budget preparations for the 1998–99 fiscal year, the City targeted a number of employee positions, including Riccio's, for elimination. Riccio claims that her position was chosen for elimination due to the complaints she pursued against Madigan. The effective date for the elimination of Riccio's position in the new budget was July 1, 1998.

Riccio also asserts that, beginning in September 1997, there was "hostility" in the Corporation Counsel's Office (in particular between her and Farrell) after she filed a union grievance claiming that her title searching responsibilities were being reduced. Following the filing of this grievance and on the heels of Riccio's complaints about Madigan, Farrell purportedly told her that "they [were] going to do everything they can to get you." Riccio claims that before these events, she had a good relationship with Farrell, but the "hostility" continued through April 1998, including Farrell's support for the elimination of Riccio's position in the proposed City budget.

---

1. The plaintiff has also requested relief from further harassment, but no evidence has been presented to show such ongoing injury.

2. The recited facts are undisputed, except where indicated.

Mary Tracy ("Tracy") was City Clerk for West Haven. On April 2, 1998, Riccio overheard a conversation in the Corporation Counsel's Office between Tracy and a member of the Corporation Counsel's Office which set in motion the events directly leading to this suit. Tracy had received a subpoena for numerous documents in a lawsuit having to do with residents of Hilton Drive in West Haven apparently challenging the City's decision to demolish buildings in that neighborhood and relocate its residents. Riccio claims that Tracy was extremely angry about receiving the subpoena and having to do the work to respond to it, and following a meeting with members of the Corporation Counsel's Office to discuss her response to the subpoena, Tracy allegedly made a comment as she was leaving the office about wishing that "they would blow them up on Hilton Drive." [3] Riccio did not discuss Tracy's alleged comment with either Farrell or Szadkowski. Instead, within five to ten minutes after Tracy left the Corporation Counsel's Office, the plaintiff went to the West Haven police department and reported Tracy's alleged comment. *See* Defs.' Ex. F.

On April 6, 1998, Szadkowski notified Riccio by letter that a disciplinary hearing would be held on April 8, 1998 because her report to the police of the Tracy statement violated the Corporation Counsel's Office's policy of "absolute confidentiality." *See* Defs.' Ex. 6. At the conclusion of the hearing, she was suspended from work for one day.[4]

Following the suspension, Riccio went on vacation and did not return to work until April 20, 1998. On April 13, 1998, she filed the present action.

When Riccio returned to work, she was assigned to the vault in the City Clerk's Office, where the land records were kept. She worked in the vault for approximately one month. On May 13, 1998, Riccio applied for early retirement from the City. Her application was accepted, and her retirement became effective as of June 30, 1998.

On January 4, 1999, Riccio, with five other employees, filed another suit in the United States District Court for the District of Connecticut against the City, Farrell, Madigan, the Chairman of the West Haven City Counsel, the City's Personnel Director, and H. Richard Borer ("Borer"), the City's Mayor. *See* Defs.' Ex. E., *Avery et al. v. City of West Haven et al,* 3:99CV00013(JCH), Compl. She alleged there that the adverse actions that she had allegedly suffered as an employee of the City resulted from her complaints against Madigan, and her union grievances relating to the workplace. Summary judgment was granted to the defendants in that case, and it is on appeal.

In Paragraph 12 of her Complaint in the instant action, Riccio claims that Borer "publically endorsed and ratified" the other defendants' actions "on behalf of the defendant City...." The defendants do not dispute that Borer made some public remarks, but state that he did so "in the context of a separate dispute between the City of West Haven and various city employees concerning pay standards."

As previously mentioned, the plaintiff has alleged two causes of action here: the first is based on her claim of unlawful retaliation for speech protected by the First Amendment under 42 U.S.C. § 1983

---

**3.** The plaintiff stated at her deposition that she did not understand to whom Tracy was referring when she allegedly used the word "they" in the alleged threat.

**4.** The West Haven police investigation of Riccio's report of Tracy's statement concluded that "Ms. Tracy's comment was not intended to alarm or harm anyone...." and the investigation was closed.

and the second is based on the Connecticut common law tort of intentional infliction of emotional distress.

### III. *Standard*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992). Additionally "where ... the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an es-

sential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548 and *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998)).

### IV. *Discussion*

The defendants argue that they are entitled to summary judgment because Riccio cannot show that her report to the police caused any adverse employment action that she suffered. In particular, they point to certain statements she made in her deposition in the *Avery* case where she attributes the adverse employment actions to her complaints against Madigan rather than the report to the police of the Tracy statement. Riccio maintains that there is sufficient evidence, including Szadkowski's April 6, 1998 letter notifying Riccio of the disciplinary hearing, to raise a genuine issue of material fact whether the adverse employment actions were caused by the Tracy situation rather than her involvement with the union issues.

#### A. *First Amendment claim*

██ "[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). To prove a First Amendment retaliation claim, a plaintiff must show "(1) her speech was constitutionally protected; (2) she suffered from an adverse employment action; and (3) her speech was a motivating factor in the adverse employment determination regarding her." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir.2002) (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)).

██ As to the first prong of the test, The question of whether certain speech enjoys a protected status under the

First Amendment is one of law, not fact. *See Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. 1684. Central to this inquiry is whether the speech may "be fairly characterized as constituting speech on a matter of public concern." *Id.* at 146, 103 S.Ct. 1684. As a general rule, speech on "any matter of political, social, or other concern to the community" is protected by the First Amendment.

*Morris,* 196 F.3d at 110.

 As to the second prong of the retaliation standard, adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *Phillips* 278 F.3d at 109. However, a plaintiff also may show an adverse employment action using an objective standard by demonstrating that "the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Id.* Finally, with respect to the third prong, the causal connection between the protected speech and the adverse employment action must be sufficient to warrant an inference that the protected speech was a substantial motivating factor in the adverse employment action such that the action would not have been taken absent the employee's protected speech. *Morris,* 196 F.3d at 110. This may be done using direct evidence, or a plaintiff may indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action. *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir.2001).[5]

 As stated above, the defendants have moved for summary judgment on the ground that there is no genuine issue of material fact that any adverse employment action suffered by Riccio was not caused by her report to the police concerning Tracy's statement. The Court need not reach this issue, however, because it concludes as a matter of law that Riccio's statement to the police was not "a matter of public concern."[6] "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir.1999). In making this determination, a court should focus on the motive of the speaker "and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id.* at 164–65.

To determine whether Riccio's report to the police touched on a matter of public concern, the Court must first examine the

---

**5.** If a plaintiff establishes the three factors, the defendant may show by a preponderance of the evidence that "it would have taken the same adverse employment action even in the absence of the protected conduct." *Morris,* 196 F.3d at 110 (internal quotations omitted). To make this determination, courts look to the test set forth in *Connick* and *Pickering v. Board of Ed.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See Gorman–Bakos,* 252 F.3d at 557. Under this test, defendants may offer evidence that the employee's conduct interfered with the employer's "effective and efficient fulfillment of its responsibilities to the public ... to such an extent that the trial court determines that the interest of the employer in providing effective and efficient public services outweighs the employee's First Amendment right to free expression." *Id.* (internal quotations and citations omitted). Given that the Court has concluded that the plaintiff's speech was not about a matter of public concern and therefore entitled to First Amendment protection, the Court need not reach these issues.

**6.** Although this issue was not raised in the defendants' summary judgment papers, it was raised by the Court at oral argument.

underlying statement by Tracy, and then consider Riccio's report of it to the police.[7]

■■■ On its face, as well as considered in its context, Tracy's statement was not a threat. While "[a] threat has been defined for application in [certain] statutes as an expression of an intention to inflict evil, injury, or damage on one another . . . [a]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) (defining "threat" in the context of a criminal prosecution under 18 U.S.C. § 115(a)(1)(5)).[8] Also, "[w]hen determining whether a statement qualifies as a threat for First Amendment purposes, a district court must ask whether the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *New York v. Operation Rescue Nat'l*, 273 F.3d 184, 196 (2d Cir.2001) (considering the question in the context of determining whether protesters had violated the Freedom of Access to Clinic Entrances Act). The determination of whether a statement is a threat is based on an objective standard: "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent of harm or assault." *Bauer v. Sampson,* 261 F.3d at 783 (quoting *Orozco–Santillan,* 903 F.2d at 1265) (finding that statements containing violent overtones made by community college professor in underground campus publication were not "true threats" and were also matters of public concern). Although these tests for criminal prosecution and First Amendment protection of allegedly threatening language are from contexts different from assessing whether Riccio perceived a real threat when she heard Tracy's comment, they provide some guidance in evaluating that comment and Riccio's reaction to it.

■■■ Under the undisputed circumstances in which Tracy made the comment about Hilton Drive, and in light of the language she used, her statement was not unequivocal, unconditional, immediate or specific as to the persons threatened. She did not state that *she* or anyone else intended to "blow them up." She did not indicate when this supposed threat was to be carried out, nor did she state whether certain individuals were its target. Thus, she conveyed neither a "gravity of purpose" nor "imminent prospect of execu-

---

**7.** For the purposes of deciding the motion for summary judgment, the defendants do not dispute that Riccio overheard the Tracy statement as recounted here.

**8.** In *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists,* 244 F.3d 1007 (9th Cir.2001), the court commented that "[o]ur case law has not been entirely consistent as to whether a speaker may be penalized for negligently uttering a threat or whether he must have specifically intended to threaten." 244 F.3d at 1015 n. 13. Specifically, it contrasted the holding of *Orozco–Santillan* with that of *United States v. Gilbert,* 813 F.2d 1523 (9th Cir. 1987), which focuses on "the element of in-

tent . . . as the determinative factor separating protected expression from unprotected criminal behavior." 813 F.2d at 1529. However, given that circuit's subsequent reliance on the objective standard of *Orozco–Santillan* in the First Amendment context in *Bauer v. Sampson,* 261 F.3d 775, 783 (9th Cir.2001), it appears that *Orozco–Santillan* is applicable in this case. Further, the Second Circuit has articulated an objective standard for criminal cases under 18 U.S.C. § 876 similar to that in *Orozco–Santillan See United States v. Malik,* 16 F.3d 45 (2d Cir.1994) ("The test is an objective one—namely, whether 'an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury.' " (internal citation omitted)).

tion" in the language she used. *See Operation Rescue Nat'l*, 273 F.3d at 196. Further, the statement was made in the context of Tracy merely receiving a subpoena about which she was upset; but that certainly could not be interpreted as a sufficient cause to provoke Tracy to carry out the alleged threat. Also, there is no evidence that anyone else who overheard her comment interpreted it as a threat[9]. *See Orozco–Santillan*, 903 F.2d at 1265. Finally, there is no evidence that Tracy—holding the important public office of City Clerk—was violent or had any history of dangerous behavior.[10] Certainly, Tracy should have used more temperate language in expressing her frustration, but no reasonable person would have interpreted that statement as a real or plausible threat.

Of course, the statement directly at issue in this case is not Tracy's comment about the residents of Hilton Drive, but Riccio's report to the police of it. *See* Defs.' Ex. F. To determine whether Riccio's report to the police was subject to First Amendment protection, the Court next must apply the *Connick* test of whether it dealt with a matter of public concern: "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. In light of the record in this case, Riccio's report to the police did not involve a matter of public concern. As discussed above, a reasonable person under the circumstances would not have considered Tracy's comment a threat on its face or in the immediate context in which it was made. The broader context is also important to the *Connick* analysis. The Tracy comment was made at a time when Riccio's bad feelings for the City's municipal leaders were at their highest intensity. Madigan had recently been removed from his union position because of Riccio's complaint, and her position in the Corporation Counsel's office was slated to be eliminated in the new budget as a result, she believed, of her complaints about the City's leadership. Finally, although Tracy has not been identified as a direct object of Riccio's complaints, as City Clerk she certainly was a part of the management of the City.

Thus, Riccio's report to the police of the Tracy comment did not touch on a matter of public concern after applying the *Connick* test.[11] She merely conveyed a comment which expressed Tracy's personal frustration. "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to the employee's behavior." *Connick*, 461 U.S. at 147, 103 S.Ct. 1684. Similarly, a "public employee's speech on matters of internal office affairs does not constitute a matter of public concern." *Quinn v. City of Johnstown*, No. 96 CV–

---

9. In her deposition, Riccio testified that Tracy made the comment while walking out of Szadkowski's office and that it was overheard at least by a secretary. *See* Defs.' Mot. Summ.J., Ex. A, Riccio Dep. ("Riccio Dep.") at 32.

10. Riccio stated in her deposition that she had seen Tracy become angry in the past, but that she never saw her strike a person or threaten bodily harm to anyone. Riccio Dep. at 36–37.

11. It would seem that the reporting of a threat rather than making it would, in most circumstances, enjoy greater protection under *Connick*. However, even given these considerations, Riccio's report does not meet the public concern test under the circumstances here.

136 (RSP/DNH), 1998 WL 187404, at *4 (N.D.N.Y. Apr.15, 1998) (concluding that public employee's remarks that various individuals "should be shot" were not comments concerning the administration of the police department and did not touch on matters of public concern), *aff'd* 173 F.3d 845 (2d Cir.1999). For example, in *Barnes v. Small*, the court held that the plaintiff's accusations that fellow employees had been engaged in various forms of misbehavior—including a criminal "assault" which involved an individual tossing a sheet of paper at the plaintiff—related to employee grievances rather than matters of public concern. 840 F.2d 972, 975 (D.C.Cir.1988). In contrast, in *Fox v. District of Columbia*, the court held that an employee's reporting of a theft to the police involved a matter of public concern in part because the theft was made possible by the result of "rather drastic managerial ineptitude." 83 F.3d 1491, 1494 (D.C.Cir.1996). The situation here is more analogous to the one in *Barnes*. By reporting Tracy's comment, Riccio relayed a statement of personal interest regarding internal office affairs; Tracy was merely frustrated at having to respond to the subpoena, and an objective person would certainly have interpreted her statement in that way.

The Court also has considered the plaintiff's deposition testimony that she felt that she should report the statement in light of other recent incidents involving violence and threats of violence. *See* Riccio Dep. at 37. There had recently been a workplace shooting in Newington, Connecticut, and another City employee had apparently expressed to the Mayor concern about the potential for similar violence at City Hall, and the Mayor interpreted the comment as a threat, resulting in increased security. *See id.* at 37–38, 47–48. However, even when accepted as true, this evidence still fails to show that Riccio's report to the police touched on matters of public concern, given the particular language and circumstances of Tracy's comment. As a result, Riccio's claim of a First Amendment violation must fail.[12]

In applying the test of whether the Tracy statement or Riccio's report of it to the police constituted "a matter of public concern," *Pickering, Connick,* and their progeny teach that the Court must apply common sense, its understanding of the circumstances of the statement, the history of the relationships of those involved, and the language used. All compel the conclusion that no reasonable person in Riccio's situation would have thought for a second that Tracy was serious. Moreover, even if such an objective eavesdropper had heard Tracy, the natural reaction would have been to first speak to others in the office about it—including the lawyers in the Corporation Counsel's office—rather than go immediately to the police.

In reaching this conclusion, the Court does not intend to discourage members of the public or government employees from

---

12. In her Local Rule 9(c) Statement of Material Facts in Dispute, Riccio asserts that it was the policy of the City that all threatening language, regardless of how "innocuous or apparently lacking in credibility they may be" must be reported to the police. In support, she attached a newspaper article which concerns a threat by a City student to kill a teacher in May 1999. That student, even though only six years old, was arrested. *See* Pl.'s Ex. A. The Superintendent of Schools also cites a "zero tolerance" policy for "any type of threat" in the article. However, this occurred over one year after the Tracy comment that is the subject of this action. Moreover, even considering such a "zero tolerance policy" in the context of the *Connick* analysis of whether Riccio's report to the police touched upon a matter of public concern, and giving Riccio some additional consideration because of that asserted policy, the Tracy comment, objectively viewed, was not a threat and Riccio's report of it still fails to meet the "public concern" test.

reporting incidents of real concern to their local police. Particularly in light of the world in which we now live, such information can be critical to law enforcement officials who protect the public safety. However, this does not require that any statement to the police is entitled to First Amendment protection or that even in these days of heightened sensitivity to public danger we should not exercise good judgment in sizing up statements of our fellow citizens. As the Eleventh Circuit explained,

> Police reports reflect information of general public interest and any information concerning ... public safety could be considered to reach matters of public interest. The fact that such information may be of general interest to the public, however, does not alone make it of "public concern" for First Amendment purposes. *See Connick*, 461 U.S. at 148 n. 8[, 103 S.Ct. 1684]. The Court in *Connick* reasoned that this "would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149[, 103 S.Ct. 1684].

*Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir.1998).[13]

### B. *Other claims*

Given that the Court has concluded that there was no violation of the First Amendment, it need not address the question of whether the City can be held liable as a municipality for the alleged retaliation or the other bases for the defendants' motion.

 The Court also declines to exercise supplemental jurisdiction over Riccio's claim of intentional infliction of emotional distress on the ground that it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford*, 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of...."), aff'd, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

### V. *Conclusion*

For the foregoing reasons, the defendants' motion for summary judgment [Doc. # 24] is granted.

---

13. Riccio may have other ways to address the sanctions she received as a result of her report of Tracy's statement to the police, such as a grievance. However, as the Eleventh Circuit stated in *Morris:*

> We cannot consider the unfairness that might have occurred if plaintiff was indeed fired for filing a truthful report and giving truthful testimony. Nor do we consider whether Morris might have some other cause of action if his version of the facts are true. The only issue before us is to decide if his firing was a violation of his constitutional right to free speech.

142 F.3d at 1383.