NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 7, 2012[*]
Decided November 7, 2012

*By the Court:*

No. 11-3604

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 09CR40051-001-JPG |
| SCOTT L. RENDELMAN,<br>*Defendant-Appellant.* | J. Phil Gilbert,<br>*Judge.* |

## O R D E R

Scott Rendelman was convicted after a jury trial of contempt of court, 18 U.S.C. § 401(3), retaliating against federal officials for the performance of their duties, *id.* § 115(a)(1)(B), and threatening the President, *id.* § 871. On appeal he challenges the district court's refusal to authorize a psychological evaluation, the court's exclusion of evidence, the sufficiency of the evidence, and his overall prison sentence, among other things. We affirm the judgment.

Rendelman has been writing obscene, threatening letters to prosecutors, judges, and sitting Presidents for over 20 years. This case started after a federal jury in Maryland found him guilty of threatening public officials in 2007. Rendelman reacted by writing the prosecutor and judge who had been involved in that case. Though his communications were to be monitored and managed once he arrived at the federal penitentiary in Marion, Illinois, he successfully sent several threatening letters before he arrived there. At Marion,

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the petition for review is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

the staff screened his mail, notified his victims of the threats, and faxed copies of the letters if the victims wanted to see them. Rendelman also wrote threatening letters to the President, which prison staff intercepted and gave to the Secret Service.

A Secret Service agent told a federal prosecutor about the letters to the President, and the prosecutor opened a grand jury investigation. Rendelman refused to comply with two grand jury subpoenas for handwriting exemplars, even after the district court ordered him to comply with the second subpoena. After Rendelman's second refusal, the prosecutor informed Rendelman that he would charge Rendelman with contempt of court. Shortly thereafter, Rendelman wrote a letter threatening to murder and sexually assault the prosecutor if the prosecutor didn't "get off my case immediately."

Rendelman was charged with contempt. When he still refused to provide the exemplar, appointed counsel retained a psychologist to evaluate his mental state and competence to stand trial. Dr. Kevin Miller concluded that Rendelman was competent to stand trial and also had understood that his refusal to provide the exemplars was wrong. Dr. Miller diagnosed Rendelman with an unspecified disorder similar to Asperger's syndrome, based on Rendelman's stubbornness, lack of empathy, and refusal to take responsibility. Although Rendelman's mental state when he wrote the letters was not the focus of the evaluation, Dr. Miller noted that Rendelman "feels fully aware and in control when writing" and that his letter writing is "not clearly compulsive in the sense of OCD." After this evaluation Rendelman elected to proceed pro se, though the district court appointed a new attorney to act as stand-by counsel.

The government arranged for a second psychologist, Dr. Christina Pietz, to evaluate Rendelman. She shared Dr. Miller's view that Rendelman was competent to stand trial and had understood that refusing to provide a handwriting sample was wrong. She diagnosed Rendelman with obsessive-compulsive personality disorder (which is distinct from obsessive-compulsive disorder) based on Rendelman's rigidness and need to be in control, and also noted his narcissistic personality traits. She opined that Rendelman "has complete control over his letter-writing behavior."

Before trial on the contempt charge, the government used handwriting samples from past cases to link Rendelman to his new round of letters and obtained a superseding indictment adding three counts of retaliating against federal officials and two counts of threatening the President. Rendelman requested authorization to retain Dr. Miller again to offer an opinion about his mental state when he wrote the threatening letters, which the psychologist had not focused on in his first evaluation. The district court denied the request. The court reasoned that Dr. Miller's initial report already included enough discussion about

Rendelman's mental state when he wrote the letters and that Rendelman had not adequately explained why another evaluation was necessary.

The government moved in limine to curtail the evidence that Rendelman could present at trial about his mental state. The government argued that Rendelman should not be allowed to introduce psychological evaluations from past prosecutions because none establishes that he suffers from a mental disease that could have affected his culpability and would simply confuse the jury. The government also contended that Dr. Miller's anticipated testimony should be limited to prevent the jury from being confused. The district court agreed with the government that the prior evaluations were irrelevant and would be confusing and decided that Rendelman could not present them. The court reserved deciding whether Dr. Miller's testimony would be admitted until Rendelman could speak with Dr. Miller and make an offer of proof to the court.

At trial the government presented the letters that Rendelman had written, evidence that DNA on the envelope flaps matched his DNA, and evidence that the handwriting in the letters matched Rendelman's. The letters included threats to rape, murder, disembowel, burn alive, and dismember his victims and their families. Rendelman's victims testified that the letters had frightened them and caused them to take security precautions, even knowing that Rendelman had never acted on previous threats. They were aware that in past cases Rendelman had obtained personal information about his victims and shown up at the office of one of his victims, as he said he would in a threatening letter.

As the trial progressed, Rendelman and the government agreed on the handling of evidence about Rendelman's mental state. Rendelman promised not to call Dr. Miller, and in return the prosecutor would let Rendelman testify extensively about his mental state when he wrote the letters and would not call Dr. Pietz in rebuttal.

In his defense Rendelman started by calling the assistant federal defenders who had advised him during the grand jury investigation. Those lawyers had said he could not refuse to provide the exemplars because handwriting samples are not testimonial and therefore not protected under the Fifth Amendment from compelled disclosure. Then Rendelman took the stand and testified that he wrote the letters to protest being raped and beaten while in prison about 20 years earlier and that he had wanted to demonstrate that incarceration does not rehabilitate or deter offenders. His conscience compelled him to write the letters, he said, because otherwise he would feel complicit in the sexual assaults that occur in prison. He noted that he had felt the compulsion to write letters only while imprisoned, and that while on supervised release he had not written any letters. (Rendelman indeed had not written any letters while on supervised release; he ended up

back in prison, however, because of letters he had written several years earlier while he was imprisoned, and the cycle started anew.)

The jury returned a guilty verdict on all counts. At sentencing Rendelman presented letters and testimony from family and friends about his gentle, nonviolent nature. He testified, as he had at trial, that his conscience compelled him to write the letters. Dr. Miller testified that Rendelman was unlikely to follow through on any of his threats because he had never been physically violent before. He said that, in his opinion, Rendelman knew that writing the letters was wrong but could not stop writing them because of an unconscious pressure to do so. Dr. Miller did not try to reconcile this conclusion with his earlier assessment that Rendelman was in control when he wrote the letters. Rendelman asked that he be allowed to serve any prison term concurrently with the sentence imposed by the federal court in Maryland (he will be serving that sentence for another decade or so).

The district court imposed a total of 96 months' imprisonment to run consecutively to Rendelman's unexpired sentence. The court adopted the probation officer's calculations of a total offense level of 26 and criminal history category of VI, yielding a guidelines imprisonment range of 120 to 150 months. The absence of past violence suggested that Rendelman probably was not dangerous, the court concluded, but still his victims had cause for concern because the possibility that he would act on his threats when released from prison could not be ruled out. The court decided to impose a sentence below the guidelines range because Rendelman's capacity was diminished to a degree. *See* U.S.S.G. § 5K2.13.

On appeal, Rendelman first argues that the district court abused its discretion by denying his motion for another evaluation by Dr. Miller. He contends that the two evaluations by Dr. Miller and Dr. Pietz did not offer opinions about his mental state at the time he wrote the threatening letters, but only at the point of his refusal to provide exemplars. He sufficiently demonstrated the need for another evaluation, he argues, by pointing to statements in Dr. Miller's first evaluation that he is rigid, overvalues his own opinion, and has a personality disorder similar to Asperger's syndrome. He contends that another evaluation would have shown that he cannot stop himself from writing the letters, pointing to Dr. Miller's testimony at his sentencing that he writes the letters because of an unconscious compulsion.

A district court must provide access to a mental-health expert if an indigent defendant shows that a mental condition will be a significant factor at trial. 18 U.S.C. § 3006A(e); *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985); *United States v. Fazzini*, 871 F.2d 635, 637 (7th Cir. 1989); *United States v. Alden*, 767 F.2d 314, 318–19 (7th Cir. 1984); *Dunn v. Roberts*, 963 F.2d 308, 313 (10th Cir. 1992); *United States v. Sloan*, 776 F.2d 926, 928–29 (10th Cir. 1985). Since Congress passed the Insanity Defense Reform Act of 1984, evidence of a mental

condition is relevant during the guilt phase of a trial only if the evidence bears on the defendant's sanity or mens rea. 18 U.S.C. § 17(a); *United States v. Dupre*, 462 F.3d 131, 137–38 & n.8 (2d Cir. 2006); *United States v. Worrell*, 313 F.3d 867, 872–74 (4th Cir. 2002); *United States v. Leandre*, 132 F.3d 796, 802 (D.C. Cir. 1998); *United States v. Schneider*, 111 F.3d 197, 201 (1st Cir. 1997); *United States v. Cameron*, 907 F.2d 1051, 1061–62, 1066 (11th Cir. 1990); *United States v. Bartlett*, 856 F.2d 1071, 1081–82 (8th Cir. 1988); *United States v. Twine*, 853 F.2d 676, 678–79 (9th Cir. 1988); *United States v. Pohlot*, 827 F.2d 889, 897–99, 905–06 (3d Cir. 1987).

The district court did not abuse its discretion by refusing to order another evaluation. First, what Rendelman hoped another evaluation would show, that he is unable to stop himself from writing letters, does not support a plausible defense and would not be a significant factor at trial. An inability to control one's actions is not a valid defense to culpability, either as an insanity defense or to show that one did not have the necessary intent to commit a crime. *See* 18 U.S.C. § 17(a); *Worrell*, 313 F.3d at 872 (explaining that capacity to control actions is not relevant to sanity inquiry); *Cameron*, 907 F.2d at 1061 (same); *Pohlot*, 827 F.2d at 890, 906–07 (explaining that evidence of unconscious influence on behavior is not relevant to question of intent to commit crime). And Rendelman was allowed to present evidence about his compulsion at sentencing, where it was appropriate. *See* U.S.S.G. § 5K2.13; *Leandre*, 132 F.3d at 802. Second, Dr. Miller's evaluation did address Rendelman's mental state when he was writing the letters, even if the focus of that evaluation was on the contempt charge. Dr. Miller specifically stated that Rendelman "feels fully aware and in control when writing" and noted that Rendelman denied having any obsessions or compulsions about writing the letters.

On a related note, Rendelman argues that the district court abused its discretion by excluding from evidence psychological evaluations from prior prosecutions, which he wanted to present to show that he didn't have the requisite mens rea because he felt compelled to write the letters. But again, the evidence was inadmissible for this purpose. *See* 18 U.S.C. § 17(a); FED. R. EVID. 402; *Worrell*, 313 F.3d at 872; *Cameron*, 907 F.2d at 1061; *Pohlot*, 827 F.2d at 905–07.

Rendelman next contends that the district court improperly refused to instruct the jurors that they must be unanimous about the particular official acts against which he was retaliating. A jury must unanimously find that the government proved each element of a crime, but need not unanimously agree about how the crime was committed. *Richardson v. United States*, 526 U.S. 813, 817 (1999); *United States v. Johnson*, 584 F.3d 731, 738–39 (7th Cir. 2009); *United States v. Griggs*, 569 F.3d 341, 343–44 (7th Cir. 2009). To prove retaliation against a public official for performing his or her duties, the government must show that (1) the defendant (2) threatened to assault (3) a federal official (4) with the intent to retaliate

against that officer (5) on account of the performance of official duties. *See United States v. Saunders*, 166 F.3d 907, 912–13 (7th Cir. 1999)*; United States v. Veach*, 455 F.3d 628, 633 (6th Cir. 2006); *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990). The government had to prove that Rendelman retaliated against a federal official for the performance of his or her duties, but did not have to prove that Rendelman was retaliating against particular official acts. Accordingly, unanimity on which particular acts he was retaliating against was not necessary and the jury instruction, which tracked the elements cited above, was appropriate. *See Johnson*, 584 F.3d at 738–39. Moreover, for each victim there was only one official act that Rendelman could have been retaliating against—the judge's involvement in his conviction in Maryland, the first prosecutor's involvement in his conviction in Maryland, and the second prosecutor's involvement in the grand jury investigation in this case.

Rendelman also insists that the evidence is not sufficient to prove that he had the specific intent to retaliate against federal officials. He contends that there is no evidence that he intended his threatening letters to be mailed, and points out that he testified that he believed the threatening letters would be screened and intercepted.

For Rendelman to be guilty under 18 U.S.C. § 115(a)(1)(B), he must have intended to communicate a threat to an official, but the communication can be through a third person and the threat need not actually reach the victim. *United States v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998); *Orozco-Santillan*, 903 F.2d at 1265 n.3; *United States v. Raymer*, 876 F.2d 383, 391 (5th Cir. 1989). We will set aside a jury verdict only if the evidence would not have justified a reasonable juror in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *United States v. Curescu*, 674 F.3d 735, 741 (7th Cir. 2012), *cert. denied*, No. 12-5371, 2012 U.S. LEXIS 7442 (Oct. 1, 2012).

There is overwhelming evidence that Rendelman intended to send the letters to his victims. Rendelman testified that he designated each threatening letter as "legal mail" to hinder screening. He admitted receiving a memorandum explaining the prison's policy for screening his mail, which provided that legal mail could be sealed by the inmate and would not be opened or screened unless the addressee consented. And, according to his own testimony, his reason for writing letters is to *communicate* to officials involved in his cases that prison has not rehabilitated him or deterred him from committing more crimes.

Rendelman next moves to sentencing. He argues that the district court did not address all of his arguments in mitigation, pointing to the arguments he made in one of his several sentencing memoranda. He contends that the court failed to discuss his assertions that he is vulnerable to abuse in prison, his criminal history category is overstated, and the government contributed to his crimes by failing to protect him from being raped.

A sentencing court must explain the bases for the sentence it imposes and address a defendant's principal, nonfrivolous arguments. *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009); *United States v. Cunningham*, 429 F.3d 673, 678–79 (7th Cir. 2005). The court's explanation of the sentence was comprehensive and, by discussing Rendelman's mental health, the court adequately addressed the issues that Rendelman cites. The court discussed Rendelman's main argument that he deserved a below-guidelines sentence because he felt a moral compulsion to write the letters, and explained that a below-guidelines sentence was appropriate because of Rendelman's mental health and diminished capacity. Rendelman's mental health also motivated the court's recommendation to the Bureau of Prisons that Rendelman receive mental-health treatment. But, in light of Rendelman's criminal history and the nature of his threats, the court ultimately concluded that a 96-month sentence was necessary to punish Rendelman and protect the public.

Rendelman also argues that the district court mistakenly believed that it could not allow Rendelman to serve his sentence concurrently with the unexpired sentence he was already serving. But in fact the district court expressly acknowledged its authority to do so but chose not to in order that Rendelman be punished for his new crimes.

We note that Rendelman correctly asserts that the district court made a clerical error on his judgment; instead of checking the box saying he was found guilty by a jury, the court checked the box indicating that he pleaded guilty. The district court should correct this error. *See* FED. R. CRIM. P. 36; *United States v. Crowder*, 588 F.3d 929, 938 (7th Cir. 2009).

We have reviewed the remainder of Rendelman's arguments, but none has merit.

AFFIRMED.