STATE of Utah, Plaintiff and Appellee,

v.

Dennis FIXEL, Defendant and Appellant.

No. 960374–CA.

Court of Appeals of Utah.

Sept. 5, 1997.

Margaret P. Lindsay, Aldrich, Nelson, Weight & Esplin, Provo, for Defendant and Appellant.

Jan Graham, Atty. Gen. and Laura B. Dupaix, Asst. Atty. Gen., Crim. Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, JACKSON and ORME, JJ.

ORME, Judge:

Dennis Fixel appeals from a conviction of "Threatening a Judge," a third degree felony, in violation of Utah Code Ann. § 76–8–316(1) (Supp.1996). He argues that the prosecutor made statements during closing argument that constitute prosecutorial misconduct. We disagree and affirm.

## FACTS

"We recite the facts in the light most favorable to the jury's verdict." *State v. Cosey,* 873 P.2d 1177, 1178 (Utah Ct.App.), *cert. denied,* 883 P.2d 1359 (Utah 1994).

On October 2, 1995, Fixel appeared before the Fourth Circuit Court for a bail hearing. After the judge set Fixel's bail and the hearing concluded, Officer Debbie Hatfield seated Fixel in the jury box, pending his return to jail. Apparently upset about the bail determination and his discussion with the judge, Fixel had to be removed from the courtroom "because he was making loud comments about what the judge had said and he was disrupting the court proceedings."

While being escorted to a police vehicle, Fixel walked several paces behind Officer Hatfield, "mumbling something." As the officer opened the door of the patrol car, Fixel, who at this time was standing immediately behind the officer, clearly and loudly stated: "When I get out the judge is dead." Officer Hatfield, who was the only person in the immediate vicinity, testified that Fixel was "visibly upset" about the day's proceedings and that his voice could have been heard by anyone standing within 10 to 15 feet of them. Officer Hatfield interpreted Fixel's statement as a threat against the judge. Accordingly, after returning Fixel to jail, she called the judge and told him of Fixel's statement.

After a trial at which Officer Hatfield and Fixel were the only witnesses, the jury found Fixel guilty of threatening a judge. Fixel testified at trial that he was indeed upset about the bail hearing, but that he never made any threat against, or said anything derogatory about, the judge. Fixel further testified that the first time he was made aware that he was being charged with threatening a judge was three days after the bail hearing, when he was again brought before the same judge in connection with the prior matter. At that time, the judge recused himself from all matters concerning Fixel pending before him, in view of the judge's connection to the "Threatening a Judge" charge newly brought against Fixel. Lastly, Fixel testified that he never intended to retaliate against the judge or to harm him in any way.

In his closing argument, defense counsel argued that even if the jury found that Fixel had made the statement alleged by Officer Hatfield, there was no evidence to establish beyond a reasonable doubt that defendant had any intent "to follow through and retaliate against the judge." The prosecutor, in rebuttal, stated that only one question required an answer in this case:

> Did the defendant make a threat, and was that threat made in retaliation to something the judge had done? That's the question you have to answer. I don't have to prove to you he intended to kill the judge. Did he make a threat to murder a judge and was that done in retaliation for what had happened in court?

Defense counsel objected to the prosecutor's statement, arguing that it misstated the law. The trial court overruled the objection, stating that the law was set forth correctly in the jury instructions,[1] which governed the case, and that the prosecutor's comments were merely argument.

1. The relevant jury instruction provides as follows:

> In order for you [to] find the defendant guilty of the offense of THREATENING A JUDGE, a Third Degree Felony, you must find that each of the following essential elements of the crime charged in the Information have been established beyond a reasonable doubt:
> 1. That the defendant, Dennis W. Fixel,
> 2. On or about October 2, 1995,
> 3. In Utah County, Utah,
> 4. Did threaten to assault, kidnap, or murder a judge
> 5. a. With the intent to impede, intimidate, or interfere with the judge while engaged in the performance of the judge's official duties, or
> b. With the intent to retaliate against the judge on account of the performance of those official duties.

After the jury returned its guilty verdict, Fixel filed a motion to arrest judgment or, in the alternative, for a new trial. The trial court denied the motion. This appeal followed.

## ISSUE

The dispositive issue in this case is whether it was misconduct for the prosecutor to argue, in closing, that the mere utterance of a threat, without the intent to carry out the threat, can satisfy Utah Code Ann. § 76–8–316 (Supp.1996), which makes it a crime to threaten a judge with the intent to interfere with the performance of a judge's official duties or the intent to retaliate against the judge for the performance of official duties.

## STANDARDS OF REVIEW

■ A prosecutor commits misconduct when her actions or remarks direct the jury's attention to a matter that should not be considered in reaching a verdict. *See State v. Emmett*, 839 P.2d 781, 785 (Utah 1992); *State v. Palmer*, 860 P.2d 339, 342 (Utah Ct.App.), *cert. denied*, 868 P.2d 95 (Utah 1993). In assessing whether a statement constitutes prosecutorial misconduct, the statement must be viewed "in light of the totality of the evidence presented at trial." *State v. Cummins*, 839 P.2d 848, 852 (Utah Ct.App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993). The trial court's "rulings on whether the prosecutor's conduct merits a mistrial will not be overturned absent an abuse of discretion." *Id.* Finally, insofar as this appeal turns on the proper interpretation of section 76–8–316, it presents a question of law which we will review for correctness, with no particular deference accorded to the trial court. *See Johnson v. Redevelopment Agency*, 913 P.2d 723, 727 (Utah 1995); *MacKay v. Hardy*, 896 P.2d 626, 630–31 (Utah 1995).

## SECTION 76–8–316

The "Threatening a Judge" provision at issue in this appeal is found in the first section of the statute formally entitled "Influencing, impeding, or retaliating against a judge or member of the Board of Pardons and Parole" and provides as follows:

(1) A person is guilty of a third degree felony *if the person threatens to assault, kidnap, or murder a judge* or a member of the Board of Pardons and Parole *with the intent to impede, intimidate, or interfere* with the judge or member of the board while engaged in the performance of the judge's or member's official duties or *with the intent to retaliate against the judge or member on account of the performance of those official duties.*

Utah Code Ann. § 76–8–316(1) (Supp.1996) (emphasis added).

In order to resolve this case, we must determine whether the statute under which Fixel was charged includes the requirement that a defendant actually intend to carry out the threat. The parties have not acquainted us with any case law interpreting section 76–8–316.

■ Fixel argues that the plain language[2] of section 76–8–316(1) "clearly requires that a person do more than merely utter a threat against a judge." To this extent, Fixel is of course correct. It is not enough that a threat is uttered. It has to be uttered with a specified intent. Fixel contends the requirement of an intent to retaliate can only be satisfied if he intended "to actually assault, kidnap, or murder the judge" because of the performance of the judge's official duties. With this contention, we disagree.

To be guilty of the offense, a person must "threaten[ ] to assault, kidnap, or murder a judge." Utah Code Ann. § 76–8–316(1) (Supp.1996). The person must make his threat either "with the intent to impede, intimidate, or interfere" with the judge's performance of official duties "or with the intent to retaliate against the judge . . . on account of the performance of those official duties." *Id.* Nothing is said about an intent to actually perpetrate an assault, kidnaping, or murder

---

**2.** We have stated that the primary consideration in statutory construction is "to give effect to the legislature's intent. To discover that intent, this court looks first to the plain language of the statute. Only when the statute's language is ambiguous will we seek guidance from the legisla-
tive history and policy considerations." *State v. Winward*, 907 P.2d 1188, 1190 (Utah Ct.App. 1995) (citations omitted). *Accord Gohler v. Wood*, 919 P.2d 561, 562–63 (Utah 1996); *Nixon v. Salt Lake City Corp.*, 898 P.2d 265, 268 (Utah 1995).

or even an intent to take action in that general direction. Thus, the court's instruction to the jury is beyond reproach, *see supra* note 1, as is the prosecutor's argument, so long as there was evidence from which the jury could find the requisite intent.[3]

■ Looking at the verdict in the required favorable light, we conclude the jury could readily find that Fixel said, "When I get out the judge is dead," and that, in so stating, Fixel was not merely registering a prediction that upon his release, by sheerest coincidence, the judge would die of natural causes. Rather, the jury was free to infer that in making the statement, Fixel was threatening to take a hand in the judge's demise, i.e., to murder the judge. As indicated, whether Fixel "really" had the intention to do any such thing, or whether he made the threat knowing he would never lift a finger against the judge, is irrelevant under the statute. The jury was free to infer that when Fixel uttered his threat, he fully expected it would be conveyed to the judge, as it in fact was, and intended that it would intimidate the judge in the course of his duties, perhaps prompting some more favorable treatment when Fixel next appeared before him, or, as actually happened, prompting the judge to withdraw from cases involving Fixel.[4]

■ Alternatively, the jury could infer that Fixel uttered the threat, expecting it

would be passed along to the judge, intending "to retaliate against the judge" for how he had performed his duties vis-a-vis Fixel. In this regard, "to retaliate" does not connote some retributive physical violence. Rather, it contemplates the simple concept of "pay back." *See Webster's Third New International Dictionary* 1938 (1986) (defining retaliate to mean "to return the like for; repay or requite in kind" and "to return like for like"). The judge, by his action, had upset Fixel. By threatening the judge, Fixel could perhaps upset him as well, thereby fully accomplishing the "pay back" that is the essence of retaliation.[5]

## CONCLUSION

■ We hold that the prosecutor's comments were not fundamentally at odds with the requirements of the statute, as to which the jury had been properly instructed, and, as a result, that there was no misconduct by the prosecutor in framing her argument.[6] Defendant's conviction is accordingly affirmed.

BILLINGS and JACKSON, JJ., concur.

---

3. In arguing that the question for the jury was whether the threat was made "in retaliation to something the judge had done" or "in retaliation for what happened in court," the prosecutor actually *overstated* the State's burden, since there need not be actual retaliation, only the "intent to retaliate." *See also infra* note 6.

4. There is rarely direct evidence of something as intangible as "intent." Intent is invariably a matter of inference to be drawn by the factfinder from all the evidence. *See State v. Germonto*, 868 P.2d 50, 55 (Utah 1993); *State v. McClain*, 706 P.2d 603, 605 (Utah 1985).

5. Although we base our holding strictly on a "plain meaning" interpretation of the statute, we note that such an interpretation of section 76–8–316(1) is in accord with the opinions of other jurisdictions that have interpreted similar provisions.

Section 76–8–316(1) is nearly identical to 18 U.S.C. § 115(a)(1)(B) (Supp.1997), which makes it a crime to threaten "to assault, kidnap, or murder, a United States official, a United States

judge, [or] a Federal law enforcement officer . . . with intent . . . to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties." Courts have uniformly held that it is irrelevant whether the person making the threat subjectively intended to carry out the threat. *See, e.g., United States v. Roberts*, 915 F.2d 889, 890 (4th Cir.1990) (stating that under section 115(a)(1)(B) government need not prove defendant's intention or present ability to actually carry out threat), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991); *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 n. 3 (9th Cir.1990) (holding intent requirement in section 115(a)(1)(B) is only that defendant intentionally or knowingly communicated threat, not that he intended to or was able to carry out threat).

6. Although defendant tries to make much of the prosecutor's use of the term "in retaliation" rather than "to retaliate," the exact phrase used in the statute, we note that "retaliation" means nothing more or less that "an act of retaliating." *See Webster's Third New International Dictionary* 1938 (1986).