**UNITED STATES of America,
Plaintiff,**

v.

**David Roland HINKSON, Defendant.**

**No. CR–04–127–C–RCT.**

United States District Court,
D. Idaho.

Dec. 22, 2004.

---

Wesley W. Hoyt, Kooskia, ID, for Defendant.

Dena Douglas–Patterson, Michael Patrick Sullivan, U.S. Dept. of Justice, Washington, DC, for Plaintiff.

## ORDER AND OPINION DENYING MOTION TO DISMISS THREAT COUNTS

RICHARD C. TALLMAN, Circuit Judge, sitting by designation.

Defendant David Roland Hinkson stands charged by superseding indictment with nine counts of soliciting other persons to murder a United States District Judge, an Assistant United States Attorney ("AUSA"), and an Internal Revenue Ser-

vice Special Agent ("SA"), and two counts of threatening to do bodily harm to family members of the prosecutor and the federal agent. 18 U.S.C. §§ 373, 115. Pursuant to Fed.R.Crim.P. 12(b)(3)(B), Hinkson moves to dismiss threat Counts 10 and 11, arguing that each count fails to allege all of the essential elements of the offense under § 115 and must be dismissed as a matter of law. Whether the threat must be communicated to the intended federal officer is a question of first impression in the Ninth Circuit. Because the indictment is sufficient on its face to charge a criminal offense, the motion is DENIED.

## I

Prior to allegedly making the threats, Hinkson was indicted on multiple counts of violating income tax and employment tax laws, structuring financial transactions to avoid currency transaction reporting requirements, and introducing misbranded drugs and devices into interstate commerce under the Food and Drug Act ("FDA"), 21 U.S.C. § 331(a). *United States v. Hinkson*, No. CR–02–0142. He pled guilty before trial to two of the FDA counts, and was subsequently found guilty by a jury in the United States District Court for the District of Idaho on May 5, 2004, as to the remaining 26 tax and structuring counts. *Id.*

Counts 10 and 11 in the current case stem from Hinkson's alleged threats against the families of two of the three officers of the United States involved in his prior prosecution: the federal prosecutor and the lead case agent from the IRS Criminal Investigation Division. Counts 10 and 11 allege the following:

### Count Ten

.     .     .     .     .

Between about mid-January 2003 and mid-March 2003, ... DAVID ROLAND HINKSON[ ] did unlawfully threaten to murder the children of Assistant United States Attorney Nancy D. Cook by stating to AB, a woman living in his house, that he wanted to kill AUSA Cook's children in front of AUSA Cook, with the intent to impede, intimidate, interfere with and retaliate against AUSA Cook on account of the performance of her official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B).[1]

.     .     .     .     .

### Count Eleven

.     .     .     .     .

Between about mid-January 2003 and mid March 2003, ... DAVID ROLAND HINKSON[ ] willfully and unlawfully did threaten to murder the children of Internal Revenue Service Special Agent Steven M. Hines by stating to AB, a woman living in his house, that he wanted to kill Special Agent Hines' children in front of Special Agent Hines, with the intent to impede, intimidate, interfere with and retaliate against Special Agent Hines on account of the performance of his official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B).

Hinkson argues that the superseding indictment is fatally defective because it fails

---

1. Counts 10 and 11 of the superseding indictment erroneously charged Hinkson with threatening family members of federal officials in violation of § 115(a)(1)(B), instead of the correct subsection (a)(1)(A). Because Hinkson was not misled or prejudiced by the Government's improper citation, this is an insufficient ground for dismissing either Counts 10 or 11. *See* Fed.R.Crim.P. 7(c)(3); *see also United States v. Clark*, 416 F.2d 63, 64 (9th Cir.1969) ("Rule 7(c) [ ] permit[s] the citation of a statute on an indictment to be amended where ... the facts alleged in the indictment will support such a change.")

to allege that the threat was communicated or intended to be communicated to the target or victim.[2] Based on the language of the statute and analogous Ninth Circuit precedent, neither direct communication nor the intent to communicate the threat to the target is a requisite element of the crime under 18 U.S.C. § 115(a)(1)(A).

## II

Section 115(a)(1)(A) states:

Whoever—(A) assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap, or murder a member of the immediate family of a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under section 1114 of this title ... with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a)(1)(A).

■ The precise issue raised by Hinkson appears to be an issue of first impression in our circuit. However, the Ninth

Circuit has enunciated the elements the Government must prove under § 115(a)(1)(B) to secure a conviction for threats against a United States official, judge, or federal law enforcement officer. The Government must prove: (1) the defendant made a threat, (2) against a federal law enforcement officer, United States official or judge, (3) with the intent to impede, intimidate, interfere with or retaliate against that officer or official, (4) while he or she was engaged in or on account of the performance of his or her official duties. *United States v. Orozco–Santillan,* 903 F.2d 1262, 1265 (9th Cir.1990).

■ The only pertinent difference between § 115(a)(1)(B)[3] and § 115(a)(1)(A) is that subsection (A) covers threats against immediate family members of federal law enforcement officers and United States officials or judges, as opposed to threats made against the officials themselves. Logic suggests that the Government's burden of proof under the almost identical relevant statutory language of § 115(a)(1)(A) must differ only as to the second element. Accordingly, the elements of § 115(a)(1)(A) require proof that: (1) the defendant made a threat, (2) against an immediate family member of a federal law enforcement officer, United States official or judge, (3) with the intent

---

**2.** The target of a threat (or to whom it was directed) is often referred to as the "victim." That terminology is a misnomer, especially in cases such as this where the threat was not communicated to the target, because "victim" often implies that the individual experienced some type of harm or pain as a result of the threat. The matter is further complicated because the object of the threats—the immediate family members of AUSA Cook and SA Hines—can also be thought of as the victims of the threats. Thus, to avoid confusion, the Court uses "target" to include anyone to whom the threat was directed or intended to affect: the prosecutor, the federal agent, and their respective family members.

**3.** § 115(a)(1)(B) provides that:

Whoever—(B) threatens to assault, kidnap, or murder a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

to impede, intimidate, interfere with or retaliate against that officer or official, (4) while he or she was engaged in or on account of the performance of his or her official duties. *Accord Orozco–Santillan,* 903 F.2d at 1265 (stating the elements of § 115(a)(1)(B)). There simply is no requirement in the statutory language that the statement be communicated to the target.

Other courts have reached different conclusions in addressing the communication issue. Some disagree as to whether proof of communication of the threat to the target is necessary to sustain a conviction under § 115. *Compare United States v. Martin,* 163 F.3d 1212, 1216 (10th Cir. 1998) (evidence was sufficient for jury to convict even though there was no evidence that the threat was communicated to the target because "[t]his court has not required that true threats be made directly to the proposed victim") *and United States v. Raymer,* 876 F.2d 383, 391 (5th Cir. 1989) ("actual receipt and subjective impression of the recipient are not elements of the crime under 18 U.S.C. § 115") *with United States v. Fenton,* 30 F.Supp.2d 520, 526 (W.D.Pa.1998) (threats spoken to a third party, unrelated and without any connection to the target, did not constitute true threats under § 115(a)(1)(B)); *see also United States v. Alkhabaz,* 104 F.3d 1492, 1494–95 (6th Cir.1997) (threats under 18 U.S.C. § 875(c) must be communicated to the threatened individual or to a third-party with some connection to the threatened individual).

■ How the court determines whether a threat is a criminally actionable

statement or whether it is protected free speech sheds light on whether the threat must be communicated to the target.[4] Threats may be any "expression of an intention to inflict evil, injury, or damage on another." *Orozco–Santillan,* 903 F.2d at 1265 (internal quotation and citation omitted). Not all threats, however, are criminally actionable. Certain expressions, including "vehement, caustic, and sometimes unpleasantly sharp attacks on Government and public officials[,]" may be protected free speech. *Watts v. United States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (internal quotation and citation omitted); *see also Orozco–Santillan,* 903 F.2d at 1265–66. A "true threat" is criminally actionable, unprotected free speech. *Id.* at 1265. In the Ninth Circuit, courts determine whether a threat is "true" by making an objective inquiry. A statement is a "true threat" if "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id.* at 1265.

■ Thus, the Ninth Circuit threat inquiry centers around the "threat-maker," and is unconcerned with whether the listener perceived the statement as a threat. *Id.* at 1265–66; *see also United States v. Fulmer,* 108 F.3d 1486, 1491 (1st Cir.1997) (describing the different approaches). Accordingly, a statement can be a "true threat" without the intended target ever directly hearing the purported threat. It naturally follows that if a threat may be true without communication to the target,

---

4. It is helpful to consider how courts determine whether a statement is a threat because there is no textual requirement in § 115 that the statement be communicated to the target. Where courts have required communication to the target, they have done so explaining that a statement is not truly threatening if it is

not communicated. *See Fenton,* 30 F.Supp.2d at 526 (where "there was simply no connection between [ ] the recipient of the communication[ ] and [ ] its intended object ... no jury could find anything truly 'threatening' ").

then communication cannot be an element of the crime.

■ Hinkson's argument relies on two cases, neither of which is persuasive. In *Fenton,* the court concluded that a remark was not "truly threatening" because it "could not influence [the target's] attitude or behavior in any way when spoken only to [an unrelated, third party.]" 30 F.Supp.2d at 526; *see also Alkhabaz,* 104 F.3d at 1496 (under § 875(c), threats not communicated to the target do not constitute actionable threats because "no reasonable person would perceive such communications as being conveyed to effect some change or achieve some goal through intimidation"). That simply is not the test in this jurisdiction of whether a statement is a "true threat." *See Orozco–Santillan,* 903 F.2d at 1265 (a threat is true if "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault"). Moreover, § 115(a)(1)(A) is clear. No actual influence, interference, or impediment is necessary. The defendant need only have the *intent* to impede or interfere or to retaliate

to be subject to criminal liability under the statute.

■ Unlike the law of our circuit, both *Fenton* and *Alkhabaz* also use a target-centered inquiry to determine whether a statement qualifies as a "true threat." *See Alkhabaz,* 104 F.3d at 1496 ("a communication containing a threat [ ] must be such that a reasonable person . . . would perceive such expression as being communicated to effect some change or achieve some goal through intimidation"); *Fenton,* 30 F.Supp.2d at 525 n. 5 (a "true threat" is one "that a reasonable recipient, familiar with the context of the communication, would interpret [ ] as a threat"). By defining a "true threat" by reference to whether the recipient actually felt threatened, this target-centered approach reads into the statute an additional element that exists nowhere in the text of § 115. *See Alkhabaz,* 104 F.3d at 1496–97 (Krupansky, J. dissenting).[5] This Court is persuaded that the better rule is as stated in *Martin* and *Raymer. See Martin,* 163 F.3d at 1216 (true threats need not be communicated to the target); *Raymer,* 876 F.2d at 391 (same).[6]

---

**5.** *Alkhabaz,* upon which *Fenton* relies, is also unhelpful because it construes 18 U.S.C. § 875(c), not 18 U.S.C. § 115(a)(1)(A). 104 F.3d at 1494. Section 875(c) provides liability for whoever *"transmits . . . any communication containing any threat[,]"* as compared with § 115, which criminalizes the making of the threat itself. 18 U.S.C. § 875(c) (emphasis added). The court in *Alkhabaz* reasoned that without a requirement that the threat be communicated to the target under § 875(c), a litany of absurd results is possible. *Id.* at 1494–95. For example, without requiring communication the statute would otherwise "cover every letter which, apart from its context, seems to threaten a person other than the addressee or letter recipient . . . [such as when] a prosecutor mail[s] a defendant's [threatening] letters to another government official for analysis or review . . . [or a] court mails [an] opinion [ ] having quoted verbatim

language used by the defendant[.]" *Id.* (quoting *United States v. Bellrichard,* 779 F.Supp. 454, 459 (D.Minn.1991), *aff'd,* 994 F.2d 1318 (8th Cir.1993)). None of those awkward results is possible here because liability is predicated on making the threat, not just communicating the threat. 18 U.S.C. § 115(a)(1)(A).

**6.** Requiring communication to the target makes little sense, especially in a case such as this involving threats to United States officials' family members. A defendant's threat against an official's family is so repugnant a personal assault on the individual that it seems self-evident that such threats need not be communicated to either the official or her family. Their utterance alone to another person, who may of their own will be incited to act upon it, should be deterred to the fullest extent of the law.

■■ Moreover, 18 U.S.C. § 871 provides an apt analogy supporting the threat-maker centered approach: threats against the President need not be communicated to the President. *United States v. Patillo,* 431 F.2d 293, 294–96 (4th Cir.1970) (statements to co-worker expressing desire to kill the President constituted true threats for the purposes of § 871); *see also United States v. Crews,* 781 F.2d 826, 831–32 (10th Cir.1986).

In support of his interpretation of the statute as requiring the allegation of actual communication, Hinkson argues that in order to demonstrate interference or impediment, the Government must prove that the threat was communicated to the target. Hinkson reasons that if the threat was never communicated to the target then the threat could not, as a matter of fact, interfere or impede the target's performance of official duties. However, careful reading of the statute reveals that it does not require actual interference or intimidation. Instead, § 115 requires that the threat be made "with the *intent* to impede, intimidate, [ ] interfere ... or retaliate[.]" 18 U.S.C. § 115(a)(1) (emphasis added).

■■ Thus, in agreement with the Fifth and Tenth Circuits, this Court holds that the Government need not allege in the superseding indictment, and thus need not prove, that the threat was actually communicated to the target.

### III

■■ Hinkson also argues that the indictment is defective for its failure to include allegations that Hinkson had the intent to communicate the threat to the target. There is no such requirement. Indeed, there is no requirement that the threat-maker even be able to carry out the threat; "[t]he only intent requirement is that the defendant intentionally [ ] communicates his threat" to someone who hears it. *Orozco–Santillan,* 903 F.2d at 1265 n. 3 (without any discussion of to whom the threat is aimed).

That is not to say, however, that proof of intent to communicate to the target is wholly irrelevant. Such proof may certainly support a jury determination that the threat was "true"—one that a threat-maker would reasonably foresee as being interpreted as a real threat. Conversely, proof that the defendant had no intent to communicate the statement to the target may be indicative of an empty threat, a potential defense to conviction under the statute.

■■ Thus, the existence or non-existence of intent to communicate goes to the jury determination of whether the threat was truly a threat. Whether a given statement properly qualifies as a "true threat" is a factual inquiry informed by the "entire factual context, including the surrounding events and reaction of the listeners." *Id.* at 1265. To the extent that Hinkson's defense is that his statements could not be construed as a true threat, it is a question for the jury that may only be decided after listening to the complete presentation of the evidence.

### IV

Neither communication nor the intent to communicate the threat to the target is an

---

Moreover, the natural extension of Hinkson's argument would require that threats under § 115(a)(1)(A) be communicated to the family members themselves—creating a potentially large loophole that would allow defendants to escape liability where they threaten an official's family by communication directly to the official, but never to the family members themselves. Dismissing the communication requirement forecloses any argument as to whom the communication must be directed and conforms more closely to the wording of the statute.

element of § 115(a)(1)(A). Whether the alleged threats were "true threats" is a determination for the jury to make after hearing the presentation of the evidence. Defendant's motion to dismiss Counts 10 and 11 for failure to allege either a communication or intent to communicate the threatening statement is DENIED.