2008 UT App 5

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey K. JOHNSON, Defendant and Appellant.**

**No. 20060602–CA.**

Court of Appeals of Utah.

Jan. 4, 2008.

Earl G. Xaiz, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Christine F. Soltis, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges GREENWOOD, P.J., THORNE, Associate P.J., and DAVIS, J.

OPINION

THORNE, Associate Presiding Judge:

¶ 1 Defendant Jeffrey K. Johnson appeals the district court's interlocutory orders deny-

ing his motion to quash the bindover and his motion in limine. We affirm.

## BACKGROUND

¶ 2 On September 21, 2005, the State charged Defendant with two counts of retaliation against a judge, both third degree felonies, in violation of Utah Code section 76–8–316, in the Sixth Judicial District. *See* Utah Code Ann. § 76–8–316 (Supp.2007). The first count alleged that on September 13, 2005, Defendant threatened to assault or murder Judge Paul D. Lyman. The second count alleged that on September 16, 2005, Defendant threatened to assault or murder Judge David L. Mower.

¶ 3 The allegations were based on statements Defendant made during several conversations about his divorce case with his divorce attorney. The statements contained various threats to murder not only opposing counsel, but also Judge Lyman and Judge Mower, the presiding judges in Defendant's divorce case.

¶ 4 After the divorce trial, opposing counsel, in accordance with the district court's direction, prepared proposed findings and a decree of divorce. Defendant filed an objection to the proposed findings. The district court then scheduled a hearing on Defendant's objections for September 19, 2005. Prior to the hearing on Defendant's objections, according to his divorce attorney's witness statement, on June 27, 2005, Defendant told her that "the problem, as he saw his situation and specifically [opposing counsel], was in 'leaving him alive.'" On September 13, 2005, Defendant, who was living in New Mexico at the time, telephoned his divorce attorney and told her that "[opposing counsel's] life will end," and that Judge Lyman and Judge Mower were "right up there" with opposing counsel. On September 16, 2005, Defendant's divorce attorney called him and without his knowledge recorded the conversation wherein Defendant stated that "[Judge Mower] was 'going to have what's coming to him.'" Defendant further stated that Judge Mower was "the one that signed the protective order for [Defendant's wife] to go remove everything except for my personal shaving articles, and steel. He won't give

them back. So I think he can make up for that." Defendant stated that if he wanted justice he needed to "handle it by [him]self." He also stated that "after the first one, the rest are free."

¶ 5 On September 19, 2005, Defendant appeared before Judge Mower. Defendant confronted opposing counsel in the courtroom and demanded that he pay Defendant back $150,000. As Defendant left the courtroom with his divorce attorney he told her that opposing counsel "is going to die and all of his family." Defendant's divorce attorney contacted the police.

¶ 6 On November 2, 2005, Judge Wallace A. Lee, sitting as a magistrate, conducted a preliminary hearing on both of Defendant's counts of threatening a judge. At that hearing, Defendant stipulated to the admission of his divorce attorney's witness statement summarizing Defendant's threats and a tape recording of Defendant's September 16 conversation with his divorce attorney. After submission of the evidence, defense counsel requested leave to file a memorandum in opposition to bindover. The magistrate granted the request and allowed the parties to submit supporting memorandum. Thereafter Defendant filed a memorandum in opposition to bindover and a motion for change of venue. On December 7, 2005, the magistrate granted Defendant's motion opposing bindover as to count one as well as Defendant's request to transfer venue to Salt Lake County. The magistrate found

> that the evidence establishes probable cause to believe that on or about 16 September 2005, ... [D]efendant did threaten to assault, kidnap or murder Judge David L. Mower, and that ... [D]efendant did so with the intent to impede, intimidate or interfere with Judge Mower while engaged in the performance of his official duties; or with the intent to retaliate against Judge Mower on account of those official duties.

(Footnote omitted.) The magistrate then transferred the case to Salt Lake County.

¶ 7 On February 13, 2006, Defendant filed a motion to quash the bindover in district court asserting that under *State v. Fixel*, 945 P.2d 149 (Utah Ct.App.1997), the State had

failed to establish probable cause for retaliation because Defendant did not reasonably expect that Judge Mower would learn of the threat. On March 21, 2006, Defendant filed a motion in limine invoking the attorney-client privilege under Utah Rule of Evidence 504 and seeking to exclude statements Defendant made to his attorney. *See* Utah R. Evid. 504. On April 24, 2006, the district court heard oral arguments on both of Defendant's motions. On June 13, 2006, the district court denied Defendant's motion in limine. The court found that because Defendant did not make the threats to his attorney for the purpose of facilitating the rendition of professional legal services said statements were not covered by the attorney-client privilege. As a result, the court concluded that the attorney-client privilege did not bar Defendant's attorney from testifying at trial. On June 26, 2006, the district court denied Defendant's motion to quash ruling that "[w]hether or not *Fixel* adds an element to Utah Code section 7[6]–8–316 ... is a question for the jury." Defendant now appeals the orders denying his motion to quash and motion in limine.

## ISSUES AND STANDARDS OF REVIEW

■■■ ¶ 8 Defendant challenges the district court's denial of his motion to quash the order binding him over on count two, threatening a judge. To support bindover the State must establish probable cause. *See State v. Virgin*, 2006 UT 29, ¶ 17, 137 P.3d 787. "In order to establish probable cause, the prosecution must produce evidence sufficient to support a reasonable belief that the defendant committed the charged crime." *Id.* The determination of whether to bind a criminal defendant over for trial is a question of law and we review that determination giving limited deference to the court below. *See id.* ¶¶ 26–34.

■■■ ¶ 9 Defendant also challenges the district court's ruling denying his motion in limine arguing that the district court erred when it concluded that the statements Defendant made to his attorney were not privileged. " 'The existence of a privilege is a question of law for the court, which we review for correctness, giving no deference to

the trial court's determination.' " *State v. Anderson*, 972 P.2d 86, 88 (Utah Ct.App. 1998) (quoting *Price v. Armour*, 949 P.2d 1251, 1254 (Utah 1997)). Likewise, "[w]hether evidence is admissible is a question of law, which we review for correctness." *Gallegos v. Dick Simon Trucking, Inc.*, 2004 UT App 322, ¶ 9, 110 P.3d 710 (alteration in original) (internal quotation marks omitted).

## ANALYSIS

### I. Motion to Quash

■■ ¶ 10 Defendant asserts that the district court erred in denying his motion to quash the bindover order because Utah Code section 76–8–316, retaliation against a judge, is a specific intent crime which requires proof that Defendant made a threat with the intent that the threat be conveyed to the judge, *see* Utah Code Ann. § 76–8–316(1) (Supp.2007). Defendant argues that, given his interpretation of the specific intent requirement of the statute, based on *State v. Fixel*, 945 P.2d 149 (Utah Ct.App.1997), the district court erred in failing to quash the bindover order because the evidence presented at the preliminary hearing demonstrates that Defendant did not utter the threat with the requisite intent.

¶ 11 The district court denied Defendant's motion to quash without deciding whether the requisite intent under section 76–8–316 included an intent or expectation that the threat be conveyed to the judge. On review we must first determine whether the crime of retaliation against a judge, Utah Code section 76–8–316, includes the requirement that an individual threatening a judge must communicate that threat with an intent or expectation that the threat would be conveyed to the subject judge. "When interpreting statutes, our primary goal is to evince the true intent and purpose of the [l]egislature." *Duke v. Graham*, 2007 UT 31, ¶ 16, 158 P.3d 540 (internal quotation marks omitted). "To discover that intent, this court looks first to the plain language of the statute. Only when the statute's language is ambiguous will we seek guidance from the legislative history and policy considerations." *State v. Winward*, 907 P.2d 1188, 1190 (Utah Ct.App.

1995) (internal quotation marks omitted). Utah Code section 76–8–316(1) states:

> A person is guilty of a third degree felony [offense of threatening a judge] if the person threatens to assault, kidnap, or murder a judge ... with the intent to impede, intimidate, or interfere with the judge ... while engaged in the performance of the judge's ... official duties or with the intent to retaliate against the judge ... on account of the performance of those official duties.

Utah Code Ann. § 76–8–316(1).

¶ 12 Defendant asserts that *Fixel* determined that the crime of threatening a judge under section 76–8–316 is a specific intent crime and concluded that the requisite intent for such a crime is only satisfied if a defendant makes a threat with the intent or expectation that the target judge would learn of the threat. We agree with Defendant to the extent that *Fixel* recognizes the requirement that a threat covered by section 76–8–316(1) be uttered with a specific intent. However, Defendant otherwise misconstrues *Fixel's* holding.

¶ 13 Neither *Fixel*, nor the plain language of the statute, nor cases interpreting the nearly identical federal statute, support Defendant's particular statutory interpretation. Contrary to Defendant's contention, *Fixel* did not determine that all threats satisfying the statute's requisite intent must be made with the intent or expectation that the threat be communicated to a judge. Instead, this court determined that the *Fixel* jury could conclude that the specific threat in *Fixel* could satisfy the statute because the jury could have reasonably inferred that the statement was uttered with the expectation that the threat would be conveyed to the judge and with the specific intent to either intimidate or retaliate against the judge by upsetting the judge. *See Fixel*, 945 P.2d at 152. However, the result in *Fixel* does not equate to a requirement that all threats punishable under the statute must be uttered with the expectation that the threat will be conveyed to the subject of the threat. To the contrary, *Fixel* addresses only one possible set of facts involving an "empty threat" made to upset a judge. *See id.* 945 P.2d 149. It

is not the exclusive type of threat covered by the statute.

¶ 14 First, the circumstances surrounding the threat in *Fixel* differ from the case at hand. Unlike the threat in *Fixel*, the threat here more closely resembles a "true threat" to retaliate by murder. A true threat has been described as one in which "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir.1990). The plain language of the statute does not limit the set of facts necessary to establish "an intent to retaliate against the judge" exclusively to the circumstances presented in *Fixel*. The statute penalizes both the retaliatory act found in *Fixel* and the threat in the present case. The phrase "with the intent to retaliate" modifies both the threatened act, i.e., to assault, kidnap, or murder, as well as the threat itself. Thus, an intent to retaliate may be evinced from circumstances where the threat was made to upset the judge, as in *Fixel*, as well as a serious expression of intent to harm, as appears to be the situation in the present case.

¶ 15 Second, we do not accept Defendant's interpretation of the statute's requisite intent because the statute is devoid of any language requiring that the threat either be actually communicated to the target or be uttered with the intent that said threat would be conveyed to the target. The plain language of the statute merely states the requirement that the threat be made with the "intent to impede, intimidate, or interfere with the judge" or with the "intent to retaliate against the judge." Utah Code Ann. § 76–8–316(1). The existence or non-existence of an intent to communicate may assist a jury in determining whether the defendant intended to impede, intimidate, or interfere, and in determining whether the threat made was a true threat. However, the statute requires neither actual communication nor the intent to communicate to the target when a true threat is involved.

¶ 16 We note that our interpretation of section 76–8–316 is in accord with other

courts that have considered this issue under the similar federal statute, which this court in *Fixel* noted is nearly identical to United States Code section 115(a)(1)(B). *See State v. Fixel,* 945 P.2d 149, 152 (Utah Ct.App. 1997); *see also* 18 U.S.C.A. § 115(a)(1)(B) (2000) (making it a crime to threaten "to assault, kidnap, or murder, ... a United States judge, ... with intent ... to retaliate against such ... judge, ... on account of the performance of official duties"). Courts that have interpreted section 115(a)(1)(B) have concluded that neither communication nor the intent to communicate the threat to the target are elements of section 115(a)(1)(B). *See United States v. Martin,* 163 F.3d 1212, 1216 (10th Cir.1998) ("This court has not required that true threats be made directly to the proposed victim."); *see also United States v. Stewart,* 420 F.3d 1007, 1016 (9th Cir.2005) (holding that under section 115(a)(1)(B), "a defendant need not communicate the threat directly to the intended target for a conviction under the statute; receipt of the threat only by a third party is sufficient [for a true threat]"); *Orozco–Santillan,* 903 F.2d at 1265 n. 3 ("The only intent requirement [in section 115(a)(1)(B) ] is that the defendant intentionally or knowingly communicates his threat, not that he intended or was able to carry out his threat."); *United States v. Hinkson,* 349 F.Supp.2d 1350, 1357–58 (D.Idaho 2004) ("Neither communication nor the intent to communicate the threat to the target is an element of [section] 115(a)(1)(A).").[1]

¶ 17 Although other courts have reached different conclusions in addressing the communication issue, we do not find those cases persuasive or relevant to the case at hand, as it appears that most "have done so explaining that a statement is not truly threatening if it is not communicated." *Hinkson,* 349 F.Supp.2d 1350 at 1355 n. 4; *see also United States v. Alkhabaz,* 104 F.3d 1492, 1496 (6th Cir.1997) (finding that threats not communicated to the target are not considered actionable threats because "no reasonable person would perceive such communications as being

conveyed to effect some change or achieve some goal through intimidation"); *United States v. Fenton,* 30 F.Supp.2d 520, 526 (W.D.Pa.1998) (concluding that a statement was not truly threatening because it "could not influence [the target's] attitude or behavior in any way when spoken only to [an unrelated third party]"). Utah's statute does not require the recipient to actually feel threatened to be subject to criminal liability under the statute, as long as the defendant had the intent to impede or interfere or to retaliate. Such an intent can be accomplished when a defendant makes a threat that a reasonable person would foresee as being interpreted by those to whom the defendant communicates the statement as a serious expression of intent to harm or assault.

¶ 18 Based upon the plain language of the statute, we conclude that neither communication nor the intent to communicate a true threat to the target is an element of section 76–8–316. Thus, because we determine that Defendant need not intend an arguably true threat be communicated to the judge, we conclude that the trial court did not err in denying Defendant's motion to quash the bindover.

## II. Motion in Limine

¶ 19 Defendant next asserts that the district court erred in denying his motion in limine wherein he argued that the statements he made to his attorney were privileged and requested the court to preclude the State from admitting such statements into evidence at trial. The trial court denied Defendant's motion, ruling that Defendant's statements to his divorce attorney were not barred for use at trial by the attorney-client privilege.

¶ 20 "The [attorney-client] privilege is recognized in [r]ule 504 of the Utah Rules of Evidence as well as by statute at [Utah Code section] 78–24–8(1)." *Doe v. Maret,* 1999 UT 74, ¶ 7, 984 P.2d 980 (footnote omitted), *overruled in part on other*

---

1. The court in *United States v. Hinkson,* 349 F.Supp.2d 1350 (D.Idaho 2004), noted that the elements in both section 115(a)(1)(A) and (B) are the same with the only pertinent difference between the sections being that the first covers threats against immediate family members of the officials and the latter covers threats against the officials themselves. *See id.* at 1355.

*grounds by Munson v. Chamberlain,* 2007 UT 91, ¶¶ 20–21, 590 Utah Adv. Rep. 30, 173 P.3d 848. Utah Code section 78–24–8(2) provides, in pertinent part, that "[a]n attorney cannot, without the consent of his client, be examined as to any communication made by the client to him ... in the course of his professional employment." Utah Code Ann. § 78–24–8(2) (2002). The general rule of privilege as provided in rule 504, is as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client between the client and the client's representatives, lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, and among the client's representatives, lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, in any combination.

Utah R. Evid. 504(b). "The attorney-client privilege 'is intended to encourage candor between attorney and client and promote the best possible representation of the client.'" *Doe,* 1999 UT 74, ¶ 7, 984 P.2d 980 (citation omitted). Although the legislature and courts have carefully guarded the integrity of the attorney-client privilege, the supreme court has long held that it may be waived by a client. *See id.*

¶ 21 Assuming, without deciding, that the threatening statements Defendant made during his conversation with his attorney were privileged, we affirm the district court's denial of Defendant's motion in limine on the alternate ground of waiver.[2] *See Bailey v. Bayles,* 2002 UT 58, ¶ 10, 52 P.3d 1158 (stating that an appellate court may affirm the judgment appealed from "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis for its ruling or action" (internal quotation marks omit-

ted)). "It is perfectly clear that once privileged material is disclosed [without claiming the privilege], the privilege of non-disclosure is waived." *State v. Anderson,* 972 P.2d 86, 90 (Utah Ct.App.1998) (internal quotation marks omitted); *see also* Utah R. Evid. 507(a) (providing that a privilege holder waives the privilege by voluntarily disclosing significant portions of the matter or by failing to take reasonable steps to prevent inadvertent disclosure). "In Utah, the question of whether the disclosure constituted a waiver turns on whether the disclosure was voluntary or excusably inadvertent." *Doe,* 1999 UT 74, ¶ 18, 984 P.2d 980.

¶ 22 In this case, the State submitted two exhibits at the preliminary hearing, which included Defendant's divorce attorney's witness statement summarizing the threats at issue and a tape recorded conversation between Defendant and his divorce attorney. Defendant was present at that hearing, and his criminal defense counsel stipulated to the admission of the privileged evidence at issue here. Because defense counsel on Defendant's behalf stipulated to the admission of the evidence, we conclude that the disclosure of the privileged communication was voluntary. Because the privileged communication was voluntarily disclosed, Defendant waived the attorney-client privilege, and his divorce attorney could testify at the preliminary hearing and at trial about her witness statement and her recorded conversation with Defendant. Once Defendant waives the privilege or consents to the disclosure of the communication the confidential information loses its privilege.[3] Accordingly, we affirm the denial of Defendant's motion in limine based on Defendant's waiver of the attorney-client privilege.

## CONCLUSION

¶ 23 Utah Code section 76–8–316 is devoid of any language requiring that a true threat be communicated to the target or uttered with the intent that said threat would be

---

2. The district court denied Defendant's motion based on its conclusion that the evidence was not privileged.

3. We note that the language of the waiver did not express an intent to limit the stipulation to the preliminary hearing, nor do we express an opinion about the effect of such a limitation.

conveyed to the target. Based on the plain language of the statute, we conclude that neither communication nor the intent to communicate a threat to the target is necessary to satisfy the requisite specific intent of the statute. Rather, the statute requires that any threat be uttered with a specified intent, i.e., either the "intent to impede, intimidate, or interfere with the judge" or with the "intent to retaliate against the judge." Utah Code Ann. § 76–8–316 (Supp.2007). Here, Defendant arguably made a true threat to assault or murder the judge in his divorce case. The court properly determined that there was probable cause to believe that the threat was made with the intent to retaliate by assaulting or murdering the judge. The district court did not err in denying Defendant's motion to quash the bindover order.

¶ 24 Additionally Defendant waived any related attorney-client privilege that he may have had when he stipulated to the admission of his divorce attorney's witness statement and the tape recorded conversation at the preliminary hearing. Accordingly, we affirm the denial of Defendant's motion in limine based on waiver.

¶ 25 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and JAMES Z. DAVIS, Judge.