In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO.  09-15-00166-CR
NO.  09-15-00167-CR

**MICHAEL GEOFFREY PETERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-07-08207 CR (Counts 1 and 3)**

## MEMORANDUM OPINION

A jury found Michael Geoffrey Peters (Peters) guilty of two counts of retaliation. *See* Tex. Penal Code Ann. § 36.06(a)(1) (West Supp. 2015).[1] Peters pleaded "true" to three prior felonies as alleged in the enhancement paragraphs of the indictment. The jury assessed punishment at thirty-five years of confinement for each count. The trial court entered a Judgment with the sentences to run

---

[1] We cite to the current version of the statute as the subsequent amendments to section 36.06 of the Texas Penal Code do not affect the outcome of this appeal.

concurrently. Peters timely appealed his convictions. In three appellate issues, Peters argues that the evidence supporting his conviction on Count 3 is insufficient, the State violated article 39.14 of the Texas Code of Criminal Procedure by not giving Peters the opportunity to inspect material evidence concerning Count 1, and that this Court should consider any unassigned error.[2] We affirm the trial court's judgments.

THE INDICTMENT

On October 21, 2014, a grand jury indicted Peters on multiple counts of retaliation,[3] wherein the grand jury alleged the following:

[COUNT NO. 1]

. . . Michael Geoffrey Peters, the Defendant, on or about June 14, 2014 and continuing through July 26, 2014, . . . did then and there intentionally or knowingly harm Tracy A. Gilbert by an unlawful act, to-wit; with intent to harass, annoy, alarm, abuse, torment or embarrass Tracy A. Gilbert, make repeated telephone communications

---

[2] A court-appointed attorney represents Peters in this appeal. This Court has also received several *pro se* letters or documents from Peters in the appeal. To the extent Peters has attempted to raise independent issues, if any, on appeal, we do not address those issues. *See Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006) (explaining that defendants have no right to hybrid representation on appeal); *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001) ("Appellants are not allowed to have 'hybrid representation' on appeal, in which an appellant and an attorney can present independent points to an appellate court.").

[3] Because the jury found Peters "not guilty" of the second count of retaliation as alleged in the indictment (Count 2), we omit the allegations of Count 2 from our recitation of the indictment.

to Tracy A. Gilbert's home in a manner reasonably likely to harass and annoy and alarm and abuse and torment and embarrass Tracy A. Gilbert, in retaliation for or on account of the services or status of Tracy A. Gilbert as a public servant,

. . . .

COUNT NO. 3

. . . on or about March 30, 2014 and continuing through June 13, 2014, . . . Michael Geoffrey Peters, hereinafter styled Defendant, did then and there intentionally or knowingly threaten to harm Tracy A. Gilbert by an unlawful act, to-wit; threaten to commit assault against Tracy A. Gilbert by stating the following "Judge Gillbert [sic] 418 CORRUPT" and "you're not gonna get away with it" and "you people will ultimately feel what I'm talking about" and "what would you do if it happened to you and your son . . . Judge Tracy Gilbert has three children" and "Please help me decide if I should go to prison" and "I am afraid of the way I'm thinking now" and "Whatever I do next I'm sure will have serious consequences if I can't find a better way" and "my life can no longer go on while these thieves get away with this theft unabated" and "do I let these people steal my son through this Doctor's lie . . . just because the Judges were paid off, or do I risk my life again, like I did in Iraq" and "you wonder why people go nuts in this country, all of a sudden they go off" and "you officials here in Texas have given me very little choice of what I should be doing" and "I can't sit back and let you steal my only son" and "this man stole everything from me, he is scum", in retaliation for or on account of the services or status of Tracy A. Gilbert as a public servant[.]

The indictment also included three enhancement paragraphs alleging three prior felony convictions.

3

EVIDENCE

Lieutenant Wakeman with the Texas Rangers testified on behalf of the State. In June of 2014, the Montgomery County District Attorney's Office contacted Wakeman regarding "a potential threat towards Judge Tracy Gilbert[,]" and the district attorney's office advised Wakeman "of some videos that had been posted on YouTube that were threatening in nature[]" and available to the public. Wakeman explained that in the YouTube videos the speaker identified himself as Peters and provided his name and address. After Wakeman compared the driver's license photograph of Peters to the videos, she determined that Peters was the individual in the YouTube videos. Wakeman testified that according to the videos, Peters "had had some sort of a . . . divorce and a child custody trial[]" in Judge Gilbert's family court, and Peters "was, obviously, not pleased with the outcome."

The State introduced into evidence Exhibit 1 which included a compilation of many hours of Peters's YouTube videos. Peters made no objections to the admission of Exhibit 1. Several segments of the videos were played for the jury. Wakeman testified that the YouTube videos were posted online starting around February 2013, when Peters's family law case was still pending, and the YouTube videos continued to be posted online through June 22, 2014. Wakeman agreed that Peters was "lashing out" at Judge Gilbert, a doctor from Houston and her husband,

4

another judge who also presided over Peters's case, the Texas Medical Board, Governor Perry, and the Baylor Medical System.

One portion of Exhibit 1 that was played for the jury included a YouTube video posted by Peters on February 21, 2013. Wakeman identified Peters as the person in the video. Wakeman explained that Peters appeared to be talking about his divorce case in the 418th District Court. Wakeman testified that another YouTube video dated March 17, 2013, and posted by Peters, was titled "Lies and Fraud and Children's Medical Records[,]" wherein Peters spoke about picketing at Texas Children's Hospital and that the hospital served him with a no trespass warning for the hospital. According to Wakeman, a May 31, 2013 YouTube video posted by Peters was titled "This is a Promise[.]" Wakeman was concerned about the "This is a Promise" video because it was directed at a doctor at Texas Children's Hospital who Peters claimed had done something that angered him with respect to the family law case. Wakeman testified that the video post amounted not just to a threat, but constituted a "promise[.]" Wakeman also testified about the nature of other videos. According to Wakeman, in some of the YouTube videos Peters often would ask people to donate money, Peters talked about a doctor with whom he was upset and who had treated his son, and Peters made requests such as asking the President to "clean up" the "corruption" in Texas courts and the medical

5

system. Wakeman testified that one of the two videos she was contacted about initially was titled "Please help me decide if I should go to prison[,]" and it was posted on June 10, 2014. A segment of that video was also played for the jury. Wakeman explained that this video stood out because "the title in and of itself says something that, basically, he's considering going to prison for something[,]" and that a person has to commit a crime to go to prison.

A portion of another video, also dated June 10, 2014, titled "Stealing children through lies[,]" was also played for the jury. Wakeman explained that therein Peters states that "whatever I do next I am sure will have serious consequences[]" and that Peters will "[r]isk [his] life again like [he] did in Iraq." Wakeman agreed that these statements sounded like he was making the statements in a threatening manner. Wakeman also agreed that Peters's statements that "You wonder why people go nuts in this Country, all of a sudden they go off; . . . you're not stealing my son and getting away with it," and, "You give me very little choice and I can't sit back and let you steal my only son[,]" appeared to be a threat to the people Peters believed had wronged him. Additional segments of other YouTube videos from Exhibit 1 were played for the jury, including part of a video posted June 13, 2014, titled "Judge Tracy Gilbert child molester[.]"

According to Wakeman, the district attorney's office also notified Wakeman about an online comment by a person with the same profile picture as Peters's YouTube account. Wakeman said the comment was posted to a Yahoo news article about two Las Vegas police officers who had been ambushed and killed by two gunmen. Wakeman testified that Peters's comment "call[ed] the people who had killed the police officers heroes and stated that he wished he would have been there to see the blood run from their veins, or their bodies, their stinking bodies[.]" According to Wakeman, she factored this comment into her investigation because its violent nature, coupled with the videos Peters had posted, "gave sort of [an] indication what his state of mind was at that point." Wakeman testified that there had been "[a]n escalation in events from the first videos that were posted on YouTube through the date of the last phone calls to Judge Gilbert's house."

Wakeman learned that Peters had called Gilbert's residence on June 14, 2014, and that Peters spoke with Gilbert's wife. Wakeman spoke with Judge Gilbert's wife about the phone call. Judge Gilbert also advised Wakeman that Peters called Gilbert's residence again on July 26, 2014, and Judge Gilbert told Peters not to call his residence again. Wakeman explained that Judge Gilbert told Wakeman that Peters called two more times that day and left two messages. Judge Gilbert forwarded three photographs to Wakeman, each showing a display of a

telephone number that registered on Judge Gilbert's caller ID when Peters called Judge Gilbert's home. Judge Gilbert also provided Wakeman with two audio recordings of the voicemail messages Peters left. Phone records for a phone number in the name of "Michael Peters[,]" were admitted into evidence. Wakeman testified that she listened to the two voicemails and that in one of the voicemails it sounded like the caller said, "see you soon." According to Wakeman, the phone number on Judge Gilbert's caller ID matched Peters's phone number and the phone records showed calls from Peters's phone number to Judge Gilbert's phone number on July 26, 2014. After reviewing Peters's YouTube videos, Wakeman was able to identify Peters as the caller that had left the voicemails.

Wakeman agreed that when determining whether Peters was a legitimate threat, she considered the YouTube videos, the statements Peters made in the past, the comments regarding other people involved, and the "totality of the circumstances." According to Wakeman, she determined, in combination with the DA's office, that "it seemed like due to the progression of events, that Mr. Peters was making a threat towards Judge Gilbert and his family. . . ."

Mary Gilbert, Judge Gilbert's wife, also testified at trial. Mary explained that she learned from Peters's YouTube videos that "Peters was very unhappy with the outcome of his case and he was upset with [her] husband, as well as the doctors

8

and other people involved." Mary testified that her husband came home with photographs of Peters and his vehicles, and Mary and Judge Gilbert showed the photographs to their children and told them to be cautious if they saw Peters or his vehicle.

According to Mary, around 6 a.m. on June 14, 2014, she was at her home in Montgomery County with her daughter, when Mary was awakened by a phone call. Mary answered the phone without looking at caller ID because her husband was out of town, and she thought it might be him calling. After she answered, she looked at the caller ID and recognized it as a number that "had called [their] house many times in the past. But we had not answered the number or the call." According to Mary, a man's voice on the telephone line said, "Is Tracy home?" and she answered, "No, he's not. May I take a message?" Mary testified that at first the man said, "No" and then said something to the effect of "Well, actually yes. Tell him that it's Michael Peters and I would like to know how much money he was paid by the hospital to implement the ruling that he gave[.]" Mary explained at trial that at this point she realized the person on the telephone was the person her husband had warned her about. Mary testified she became "[v]ery concerned[]" and hung up and called her husband. She said her husband told her he would contact Wakeman. Mary and her daughter left to stay with relatives because

Mary "was concerned[]" and "didn't know if Mr. Peters was going to be coming to [their] residence." Mary testified that Peters called back two more times that morning, but she did not answer the phone.

Mary further explained that about a month later Peters called their home and spoke with Judge Gilbert and then left two messages on their answering machine. She identified their phone number as a number listed on Peters's phone records for calls on July 26, 2014. She testified that the first voicemail said, "Out of sight but not out of mind. Remember that, a_ _hole[,]" and the second one said, "See you soon." Mary testified that she was very concerned and "felt like those were threats, that maybe he was going to try and retaliate in some way." Mary said the Gilberts increased security at their home. According to Mary, their home phone number was unlisted and never before had a party from one of her husband's cases called her at home. Mary agreed at trial that the calls from Peters to her home were disturbing, harassing, and annoying.

Judge Tracy Gilbert testified that, at the time of trial, he had been the judge in the 418th District Court for approximately seven years. He testified that in 2014 his staff brought to his attention certain YouTube videos that Peters had posted online and the staff told Judge Gilbert that threats had been made by Peters which he should be concerned about. Judge Gilbert explained that he recalled Peters had

filed a suit in 2012 for annulment and a suit affecting the parent-child relationship and the suits were in Judge Gilbert's court. According to Judge Gilbert, Peters's wife was represented by an attorney in the suit, and Peters represented himself. Judge Gilbert testified that the suit began in 2012 and concluded in the summer of 2013. Judge Gilbert explained to the Jury that "by the time [Peters] was in front of [Judge Gilbert], there had already been a contested temporary orders case before the associate judge and a ruling had already been made awarding primary custody of the child to the mother and . . . visitation issues, child support, all of that." According to Judge Gilbert, there was a jury trial in the Peters case but Judge Gilbert did not preside over the jury trial, did not preside over any evidentiary hearings, and only recalled presiding "[a] handful[]" of times in "shorter types of hearings[]" for the case.

Judge Gilbert agreed that he considered the YouTube videos posted online by Peters to be of a "threatening nature[,]" and Judge Gilbert testified that he specifically remembered one of the videos wherein Peters identified and discussed Gilbert's wife and children in the video. According to Judge Gilbert, after he watched the YouTube videos, Gilbert contacted the district attorney's office. Gilbert testified that Ranger Wakeman indicated to him that they "were starting to monitor the videos, keep an eye on Mr. Peters." Out of concern for the safety of his

11

family, Judge Gilbert showed his wife and children pictures of Peters and of Peters's vehicle and warned them about Peters.

Judge Gilbert explained to the jury that in June, while the Judge was out of town, he received a call from his wife who was at home with their daughter. Gilbert said his wife informed him that Peters had called their house early in the morning. Judge Gilbert testified that his wife and daughter went to stay with relatives and he contacted Wakeman. According to Judge Gilbert, on July 26th, he received a call on his home phone which he answered. While he could not say verbatim what the caller stated, Judge Gilbert testified that the person calling asked essentially, "Is Tracy there?" and that he answered, "This is he[,]" and after Peters identified himself, Judge Gilbert sternly told Peters, "This is my home. Do not ever call here again[,]" and hung up. According to Judge Gilbert, Peters called two more times that day, but Judge Gilbert did not answer. Judge Gilbert explained that the caller left voicemail messages: one that said something like "Out of sight but not out of mind. . . . Remember that, a_ _hole[,]" and the second one was "See you soon." Photographs Judge Gilbert took of his caller ID on his phone at the time of the calls were admitted into evidence. The prosecutor showed Peters's phone records to Judge Gilbert, Judge Gilbert identified his own phone number listed once on June 14, 2014, and listed twice on July 26, 2014. Judge Gilbert

12

characterized the voicemail messages as "threatening," and he agreed the voicemail messages were also harassing.

Texas Ranger Roger Dixon testified that, in July of 2014, Lieutenant Wakeman requested his assistance on a case in which Michael Peters was "suspected of making some phone calls and threats to a district judge." Dixon testified that Wakeman told him she believed Peters was in Val Verde County, one of the counties in which Dixon was working, and Wakeman asked Dixon to serve arrest and search warrants on Peters. Wakeman prepared the arrest warrant for the charge of retaliation, and Dixon executed the warrant on Peters at a location in Val Verde County, Texas. Dixon described the location as "a very remote area." A couple of days after Peters was arrested, Dixon executed a search warrant and seized eighteen items from the residence, including computer equipment and documents pertaining to Judge Gilbert and the Gilbert home (such as phone numbers, address, a map to the Gilbert's house, and the value of their house) that appeared to be from multiple online background and research services.

Jeffery Chappell, a special agent with the Department of Homeland Security who investigates cyber-crimes and is certified to examine computers and other electronic devices forensically, also testified at trial. Chappell explained that he searched the hard drive of the computer seized from Peters and found matches for

13

Judge Gilbert's name. Chappell was unable to find copies of Peters's YouTube videos on the computer.[4]

ISSUES ON APPEAL

In his first appellate issue, Peters challenges the sufficiency of the evidence supporting his conviction for Count 3. In his second issue, Peters argues that, despite a timely request for records, he was not given an opportunity to inspect material phone records presented by the State concerning Count 1 of the indictment at trial as required by article 39.14 of the Texas Code of Criminal Procedure. In issue three, Peters asks this Court to consider any unassigned error if his trial counsel or appellate counsel "failed to properly object or raise an issue that is clearly erroneous and harmful error[.]"

ANALYSIS

Sufficiency of the Evidence as to Count 3 of the Indictment

In issue one, Peters challenges the sufficiency of the evidence supporting his conviction under Count 3 of the indictment. Peters argues that the State failed to produce evidence of any threat of unlawful conduct, an essential element of retaliation. A person commits the offense of retaliation if he "intentionally or

---

[4] Peters did not challenge at trial, nor does he challenge on appeal, that he made the videos that were introduced into evidence as Exhibit 1. Peters was allowed upon his request to represent himself during the trial, with his attorney assisting.

knowingly harms or threatens to harm another by an unlawful act . . . in retaliation for or on account of the service or status of another as a . . . public servant[.]" Tex. Penal Code Ann. § 36.06(a)(1)(A). Peters contends that he made no threat to assault or perform any other specific unlawful act required as an element of section 36.06(a)(1) and that his YouTube videos were only "pleas for help and expressions of frustration with individuals[.]"[5]

When an appellant challenges the sufficiency of the evidence supporting a conviction in a criminal case, appellate courts consider all of the evidence in a light most favorable to the verdict and decide, after reviewing the evidence in that light, whether a rational trier of fact could have found the appellant guilty of the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In reviewing sufficiency challenges, we are required to give the jury's findings and its conclusions deference, as it was the jury's responsibility to fairly resolve all conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to resolve whether the defendant is guilty of violating the criminal provision that is at issue at trial. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

---

[5] On appeal, Peters does not assert that he did not make the statements alleged in Count 3 or that Judge Gilbert is not a public servant.

Under section 36.06(a)(1)(A), a person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant, witness, prospective witness, or informant. Tex. Penal Code Ann. § 36.06(a)(1)(A). A threat to harm another by "an unlawful act" will support a conviction for retaliation under the statute. *Meyer v. State*, 366 S.W.3d 728, 731 (Tex. App.—Texarkana 2012, no pet). Although the retaliation statute does not define an "unlawful act[,]" the word "unlawful" is defined within the definitions contained in the General Provisions of the Texas Penal Code. *See* Tex. Penal Code Ann. § 1.07(a)(48) (West Supp. 2015). Section 1.07(a)(48) defines "unlawful" to mean "criminal or tortious or both." The word "harm" also is not defined in the retaliation statute, but it is defined in section 1.07(a)(25) as "anything reasonably regarded as loss, disadvantage, or injury . . . ." *Id.* § 1.07(a)(25). A threat of physical injury is not required. *See Meyer*, 366 S.W.3d at 731. "That a threat is subtle does not make it less of a threat." *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet. ref'd) (citing *United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir. 1989)).

Comments supporting retaliation may be evaluated by a factfinder in the context within which they were uttered, and retaliatory intent may be inferred from

an accused's acts, words, or conduct. *Meyer*, 366 S.W.3d at 731; *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.). Alleged threats should be considered in light of their entire factual context, including the reaction of the listeners and the surrounding events. *Manemann*, 878 S.W.2d at 337 (citing *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990); *United States v. Mitchell*, 812 F.2d 1250, 1255 (9th Cir. 1987)). "Whether a particular statement may properly be considered to be a threat is governed by an objective standard-- whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id.* (citing *Orozco-Santillan*, 903 F.2d at 1265; *Mitchell*, 812 F.2d at 1255-56)).

Peters relies on *Meyer v. State* in support of his argument that he made no threat to assault or perform any other specific unlawful act as required by section 36.06(a)(1). *See* 366 S.W.3d 728. In *Meyer*, the defendant was on deferred adjudication, community supervision, for attempted retaliation. *Id.* at 729. While he was on deferred adjudication, Meyer wrote a letter to a municipal court judge in connection with a minor offense, and Meyer's community supervision was revoked. *Id.* On appeal, Meyer argued that there was insufficient evidence that he

threatened to unlawfully harm the municipal judge, and thus insufficient evidence that he committed the offense of obstruction or retaliation under section 36.06. *Id.*

In Meyer's letter, Meyer informed the municipal judge that the judge lacked jurisdiction and authority to adjudicate the matter, that "any further action, other than dismissal[]" would constitute a violation of Meyer's rights, that the municipal judge lacked immunity for such action, and that Meyers would prosecute claims "to the fullest extent of the law[.]" *Id.* at 730. Meyer also indicated that a suit would be brought for such injuries and that "[w]e are all obligated to obey the law, no exceptions[.]" *Id.*

The Texarkana Court of Appeals determined that the evidence was sufficient to support a finding that Meyer threatened harm to the judge. *Id.* at 732. However, the Texarkana Court of Appeals found that the evidence was "insufficient to support the adjudication premised solely on Meyer's committing the offense of obstruction or retaliation." *Id.* In reversing the trial court's judgment revoking Meyer's community supervision and adjudicating his guilt, the Texarkana Court of Appeals explained:

> The missing element of proof, however, in our view, is any evidence that Meyer's letter threatened unlawful action. In his letter, Meyer threatens criminal prosecution and civil actions against those who violate his rights. He warns of their loss of immunity from liability. He, in essence, says, "No more Mr. Nice Guy." He says he has adopted a "come what may" philosophy, but he moderates even

that comment with a statement that everyone is obligated to follow the law. He finishes with a warning that proceeding further will be at the personal risk of the offender—enough to warrant a finding that he threatened harm, at least some personal financial loss—but he stops short of threatening to take unlawful action against the judge or anyone else.

*Id.*

*Meyer* is distinguishable from the present case. Peters posted a series of YouTube videos and made statements in which Peters actually indicated that his actions against Judge Gilbert could have criminal consequences. The jury heard and viewed the YouTube videos that Peters made, which included statements such as "Please help me decide if I should go to prison[,]" "Whatever I do next I'm sure will have serious consequences if I can't find a better way[,]" and "do I let these people steal my son through this Doctor's lie . . . just because the Judges were paid off, or do I risk my life again, like I did in Iraq[.]" The jury heard Wakeman testify that she considered the "totality of the circumstances[,]" the statement that Peters made about the killing of police officers, the statements Peters made about others he felt were connected to Peters's family case, and the escalation of the situation. Wakeman concluded that the videos and surrounding circumstances implicitly demonstrated that Peters's conduct had escalated and Wakeman concluded that Peters intended to commit a crime against Judge Gilbert. Unlike the letter in *Meyers*, the statements Peters made do not contain an overriding content that

19

appear to limit Peters's threats of harm to only "lawful actions," nor is Peters simply stating that he intends to file a lawsuit or that he will "follow the law."

Based on the combined and cumulative force of all the evidence and testimony that the State presented to the jury, and viewing the evidence in a light most favorable to the verdict, we conclude that the evidence was sufficient to allow a rational jury to conclude beyond a reasonable doubt that Peters intentionally made threats to harm Judge Gilbert by an unlawful act. *Cf. Meyer*, 366 S.W.3d at 732; *see also Brock v. State*, No. 10-14-00224-CR, 2016 Tex. App. LEXIS 155, at **1-2, 34-36 (Tex. App.—Waco Jan. 7, 2016, no pet.) (affirming a retaliation conviction where the defendant told the trial court judge, "Oh, I've got something for you, just wait[,]" because a reasonable person could interpret the defendant's statement as a veiled or implied threat to harm the judge by an unlawful act); *Austin v. State*, No. 10-12-00066-CR, 2013 Tex. App. LEXIS 1234, at **4-5 (Tex. App.—Waco Feb. 7, 2013, pet. ref'd) (mem. op., not designated for publication) (affirming a retaliation conviction where the defendant left three voice messages for an officer for the City of Waco that included a threatening rap song and statements that the defendant was going to "come at him," he was going to "catch a murder case," and said "you're gonna get done, son"); *Gohe v. State*, No. 02-10-00131-CR, 2011 Tex. App. LEXIS 2840, at **8-11 (Tex. App.—Fort Worth Apr.

14, 2011, pet. ref'd) (mem. op., not designated for publication) (affirming a retaliation conviction where the defendant told another that she intended to "take care of this judge," that she was "going to take matters in her own hands," and that "she was not afraid to go to jail"); *Wortham v. State*, No. 09-02-505-CR, 2003 Tex. App. LEXIS 3125, at \*\*3-6 (Tex. App.—Beaumont Apr. 9, 2003, no pet.) (mem. op., not designated for publication) (jury could have reasonably concluded that comments by defendant that "I have to come back[,]" "The police can't be here 24 hours; you're going to need 24-hour security[]" were, when considered in context, a threat to harm by unlawful action under section 36.06). The evidence is sufficient to support the conviction as to Count 3. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360; *Hooper*, 214 S.W.3d at 13. Issue one is overruled.

Alleged Discovery Violation Regarding Count 1 of the Indictment

In his second issue, Peters contends that, despite having made a timely request for records, "Appellant was not given the opportunity to inspect material phone records presented at trial by the State concerning Count 1 of the indictment pursuant to Tex. Code. Crim. Proc. art 39.14." *See* Tex. Code Crim. Proc. Ann. art. 39.14(a) (West Supp. 2015) ("[A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection . . .

21

of . . . any designated documents . . . that are in the possession, custody, or control of the state[.]"). Peters argues that

> Appellant was denied the opportunity [to] inspect phone records obtained by the State and used at trial as evidence to show Appellant made several more phone calls to Judge Tracy A. Gilbert. Appellant properly filed requests for inspection of the State's evidence, the State failed to turn over the acquired phone records as required by Tex. Code. Crim. Proc. art 39.14 before trial, and Appellant was unfairly prejudiced by not being afforded the opportunity to review material evidence.
>
> . . . .
>
> Had Appellant been made aware of the phone record evidence containing more phone calls, he may have been more likely to accept a plea offer, gather additional evidence to combat what the State had presented, or attempt to explain the reasons for the additional phone calls.

Peters argues that the phone records were not sent to his counsel until the day after the guilty verdict, and that he filed a motion for new trial on the basis of new evidence.

We have examined the entire appellate record and the record does not support Peters's argument on this issue. Rather, according to the record, prior to trial, the court addressed various motions that were filed by Peters, including a motion for continuance that Peters filed before trial wherein he claimed the State had notified Peters of the potential of newly-discovered evidence about additional phone records. The State explained to the trial court that it had not yet obtained any

22

additional records but that the State had submitted a search warrant to a phone provider and requested the response to be expedited. The trial court denied the appellant's motion for continuance on grounds that the court would exclude from evidence any records regarding additional phone calls, and that the trial court would only allow into evidence the phone records that pertained to the applicable time period from the indictment. On the first day of trial, the trial court stated on the record that the State had already provided phone records "for a certain small window[]" and that the trial court was "going to limit [the State] to around the date in question in the Indictment[]" because "I don't think it's fair to the Defendant to bring up at the eleventh hour additional calls." The indictment and the jury charge limited the retaliation allegations pertaining to telephone calls to the dates of June 14, 2014 to July 26, 2014.

The appellate record includes only one set of phone records from T-Mobile and such records were introduced as "State's Exhibit 5." State's Exhibit 5 was admitted into evidence during the guilt/innocence phase of the trial without any objection from Peters. Exhibit 5 contains a log of telephone calls from the time period of June 12, 2014 to July 28, 2014, which corresponds to the pretrial ruling of the trial court.

After the jury's guilty verdict, but prior to the beginning of the punishment phase of the trial, defense counsel states on the record that earlier that morning the State had indicated to defense counsel that the State had received additional records in "the form of a phone record, which to some degree seems to contradict the testimony of Mary Gilbert, who . . . indicated that phone calls had been received under the . . . cell phone number of Mr. Peters for up to a year prior to this trial." Peters's defense counsel argued to the trial court that the additional phone records do not show any calls from Peters's cell phone prior to June 2014, and that defense counsel intended to file a motion for new trial based on the newly discovered evidence. Neither the State, nor Peters ever introduced the additional records into evidence. The only telephone records in the appellate record and used during the trial were marked and admitted as "State's Exhibit 5."

After the trial, Peters filed a motion for new trial wherein he argued that "[t]he District Attorney provided new evidence in the form of phone records of Tracy Gilbert's home phone number which were not provided to defense counsel until April 30, 2015, the day after the verdict was rendered. This evidence contradicts the testimony at trial." No phone records were attached to the motion for new trial. The motion for new trial was overruled as a matter of law, and Peters

does not challenge on appeal the trial court's ruling pertaining to the motion for new trial.

Furthermore, Peters's argument at trial relating to the "additional records" does not comport with his argument on appeal, and therefore he failed to preserve this issue for appellate review. *See Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003); *see also* Tex. R. App. P. 33.1. And, even if Peters had presented on appeal the argument he made to the trial court, Peters did not take the necessary steps to have the "additional records" included within the appellate record by either a proffer or by attaching the records to his motion for new trial, and Peters has preserved nothing for our review. *See Pinson v. State*, 598 S.W.2d 299, 301 (Tex. Crim. App. 1980) (citing *Moore v. State*, 509 S.W.2d 349, 352 (Tex. Crim. App. 1974)); *see also* Tex. R. App. P. 33.1(a), 33.2. We overrule issue two.

## Unassigned Error

In his third issue, Peters asks this Court to address any unassigned error if his trial counsel or appellate counsel "failed to properly object or raise an issue that is clearly erroneous and harmful error[.]" Appellate courts may review properly preserved but unassigned error by ordering briefing by both parties. *Pena v. State*, 191 S.W.3d 133, 136-38 (Tex. Crim. App. 2006). We have not ordered additional briefing in this case. The stated issue presents no error for appellate review. *See*

Tex. R. App. P. 38.1(f). We overrule issue three and affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on March 18, 2016
Opinion Delivered June 1, 2016
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.